ORDER AND JUDGMENT **
JEROME A. HOLMES, Circuit Judge.
Plaintiffs-Appellants Sierra Club, Inc., Clean Energy Future Oklahoma, and East Texas Sub Regional Planning Commission (“Appellants”) sued Defendants-Appellees United States Army Corps of Engineers, Thomas Bostick in his official capacity as Commanding General and Chief of Engineers of the U.S. Army Corps of Engineers, and three other Corps members in their official capacities — Michael Walsh, Michael Teague, and Christopher Saliese — (collectively, “Corps”)[1] for violations of the National Environmental Policy Act (“NEPA”), the Clean Water Act (“CWA”), and the Administrative Procedure Act (“APA”) related to the Corps’s approval of the construction of an oil pipeline to run from Cushing, Oklahoma to oil refineries along the Gulf Coast near Port Arthur, Texas (“Gulf Coast Pipeline”). Appellants sought a preliminary injunction to prevent construction of the Gulf Coast Pipeline until the resolution of their suit. The district court denied Appellants’ request for a preliminary injunction and this interlocutory appeal followed. Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we affirm the district court’s denial of the preliminary injunction.
I
The Corps has the authority to issue individual and general permits authorizing the discharge of dredged or fill material into the waters of the United States. See 33 U.S.C. § 1344(a), (e). The Corps’s regulations set forth the policies and procedures required for the Corps to issue general nationwide permits (“NWPs”). In February 2012, the Corps reissued NWP 12, an NWP that allows, inter alia, “the construction, maintenance, or repair of utility lines.” Aplt.App. at 264 (77 Fed. Reg. 10,271, issued Feb. 21, 2012).
Also in February 2012, TransCanada announced plans to construct the Gulf Coast Pipeline — a 485-mile oil pipeline that was designed to run from Cushing, Oklahoma to oil refineries along the Gulf Coast near Port Arthur, Texas. The Gulf *888 Coast Pipeline was originally proposed as part of a larger oil pipeline (“Keystone XL Pipeline”) that was designed to run from Canada to the Gulf Coast. TransCanada submitted pre-construction notifications regarding the Gulf Coast Pipeline to three Corps districts — Galveston, Fort Worth, and Tulsa. The Gulf Coast Pipeline was planned to run through the territory of these three Corps districts, and TransCa-nada sought verification that its pipeline could proceed under NWP 12. During June and July 2012, each Corps office verified that the Gulf Coast Pipeline could proceed under NWP 12.
Appellants sued the Corps in the United States District Court for the Western District of Oklahoma, challenging the validity of the Corps’s reissuance of NWP 12 and the Corps’s verification that the Gulf Coast Pipeline could proceed under it. Appellants alleged that these actions violated NEPA, the CWA, and the APA in several respects. They moved for a preliminary injunction, seeking to enjoin the Corps’s verifications. The verifications would permit construction of the Gulf Coast Pipeline to commence; it was expected to start in August 2012. Following a hearing, the district court denied Appellants’ motion for a preliminary injunction. The district court determined that Appellants did not have a likelihood of success on the merits and that the other equitable factors did not favor granting the injunction. This interlocutory appeal followed.
II
A
We review the “grant or denial of a preliminary injunction for an abuse of discretion.” Davis v. Mineta, 802 F.3d 1104, 1110-11 (10th Cir.2002); accord Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1128 (10th Cir.2013) (en banc), petition for cert. filed, 82 U.S.L.W. 3139 (U.S. Sept. 19, 2013) (No. 13-354); Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne, 698 F.3d 1295, 1301 (10th Cir.2012). “An abuse of discretion occurs only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling.” Awad v. Ziriax, 670 F.3d 1111, 1125 (10th Cir.2012) (quoting Wilderness Workshop v. U.S. Bureau of Land Mgmt., 531 F.3d 1220, 1223-24 (10th Cir.2008)) (internal quotation marks omitted). “Under an abuse of discretion standard, a trial court’s decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.” Somerlott v. Cherokee Nation Distribs., Inc., 686 F.3d 1144, 1152 (10th Cir.2012) (quoting Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc., 259 F.3d 1226, 1235 (10th Cir.2001)) (internal quotation marks omitted). “We have previously characterized an ‘abuse of discretion’ as ‘an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.’” Wyoming v. U.S. Dep’t of Agric., 661 F.3d 1209, 1227 (10th Cir.2011) (quoting Attorney Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d 769, 776 (10th Cir.2009)), cert. denied, — U.S.-, 133 S.Ct. 144, 184 L.Ed.2d 233 (2012).
A party seeking a preliminary injunction must prove that all four of the equitable factors weigh in its favor: specifically, prove that “(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.” Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir.2009); see Winter v. *889 Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (“A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.”); Conestoga Wood Specialties Corp. v. Sec’y of U.S. Dep’t Health and Human Servs., 724 F.3d 377, 382 (3d Cir.2013) (“A plaintiff seeking an injunction must meet all four criteria, as ‘[a] plaintiff’s failure to establish any element in its favor renders a preliminary injunction inappropriate.’” (alteration in original) (emphasis added) (quoting Nutra-Sweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir.1999))), petition for cert. filed, 82 U.S.L.W. 3139 (U.S. Sept. 19, 2013) (No. 13-356); Black Fire Fighters Ass’n v. City of Dali., 905 F.2d 63, 65 (5th Cir.1990) (“The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria.” (emphasis added)). “[Bjecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.” Beltronics, 562 F.3d at 1070 (quoting Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir.2003)) (internal quotation marks omitted); see Winter, 555 U.S. at 22, 129 S.Ct. 365 (“[Ijnjunetive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.”); Munaf v. Geren, 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) (“A preliminary injunction is an ‘extraordinary and drastic remedy!;]’ it is never awarded as of right.” (citations omitted) (quoting 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948, at 129 (2d ed.1995))).
B
Our analysis begins and ends with the third preliminary injunction factor — that is, whether Appellants’ “threatened injury outweighs the injury the opposing party will suffer under the injunction,” Awad, 670 F.3d at 1125, or, as characterized by the Supreme Court, whether “the balance of equities tips in [Appellants’] favor,” Winter, 555 U.S. at 20, 129 S.Ct. 365. The district court concluded that the threatened environmental injuries were outweighed by the financial harm that the injunction would cause TransCanada.[2] Be *890 cause we conclude that Appellants have not carried their burden of demonstrating that the district court’s determination regarding the balance of harms factor was an abuse of discretion, we affirm the district court’s denial of the preliminary injunction. See Chem. Weapons Working Grp., Inc. v. U.S. Dep’t of the Army, 111 F.3d 1485, 1489 (10th Cir.1997) (“We ... affirm the district court’s denial of Plaintiffs’ request for a preliminary injunction on the basis of its balance of harms finding, obviating the need to address Plaintiffs’ other arguments justifying a preliminary injunction in this instance.”); see also Herff Jones, Inc. v. Okla. Graduate Servs., Inc., 237 Fed.Appx. 384, 388 (10th Cir.2007) (affirming the denial of a preliminary injunction solely on the ground that the district court did not abuse its discretion in determining that the balance of harms weighed against the party pursuing a preliminary injunction); cf. Winter, 555 U.S. at 23-24, 129 S.Ct. 365 (noting that plaintiffs’ failure on the balance of harms factor “alone require[d] denial of the requested injunctive relief’ (emphasis added)).
The district court determined that the balance of harms favors Appellees. Specifically, it found that the harm an injunction would cause TransCanada was significant — by the time of the August 2012 hearing, TransCanada had spent in excess of $500 million on the pipeline and it was “undisputed that further delay w[ould] cost hundreds of thousands of dollars each day.” Aplt.App. at 2001 (Dist. Ct. Order, dated Aug. 5, 2012). Moreover, the district court noted that Appellants did not suggest that “they ha[d] the ability to post a bond to cover any of the irretrievable loss should they ultimately lose.” Id. Weighing on the other side of the scale were the environmental harms of concern to Appellants. The district court was not impressed by the magnitude of these harms. Specifically, it stated, “In essence, this is all over a loss of waters of the United States of less than one acre ... over the entire distance of the pipeline,” and that Appellants “have failed to show that this project will have more than a minimal impact on the environment.” Id. at 2002-03. In sum, the court ruled that Appellants had failed to carry their burden of showing that the balance of harms factor tipped in their favor.[3]
*891 Before us, the Appellants’ failure to demonstrate that the district court abused its discretion in balancing the harms, standing alone, is fatal to their cause. In other words, to show that the district court committed reversible error, Appellants had to demonstrate that the court’s ruling against them on the balance of harms factor — an essential criterion for obtaining a preliminary injunction — was an abuse of discretion. And Appellants’ showing in this regard is woefully deficient. More specifically, Appellants do not expressly maintain that any of the district court’s factual findings made in support of its balancing were without support in the record. See Awad, 670 F.3d at 1125. Nor do Appellants contend that the district court’s balancing of the harms “exceeded the bounds of permissible choice in the circumstances,” Somerlott, 686 F.3d at 1152 (quoting Abbott Labs., 259 F.3d at 1235) (internal quotation marks omitted), or that it was “arbitrary, capricious, whimsical, or [evinced a] manifestly unreasonable judgment,” Wyoming, 661 F.3d at 1227 (quoting Tyson Foods, 565 F.3d at 776) (internal quotation marks omitted).
Instead, Appellants focus principally on their view of the environmental harms that would flow from construction of the Gulf Coast Pipeline, and they attempt to minimize the harms an injunction would impose on Appellees. For example, relying on the Environmental Impact Statement prepared for the Keystone XL Pipeline, Appellants argue that environmental harms from the Gulf Coast Pipeline include “harm to soils, surface water and groundwater, wetlands, vegetation, wildlife, fisheries, land use, recreation and special interest areas, visual areas, air quality and noise and the significant rise of pipeline spills.” Aplt. Opening Br. at 53. On the other hand, with respect to the harm an injunction would inflict on Appellees, Appellants maintain that financial harm, as a general matter, cannot weigh at all, see id. at 53 (“Economic harm is not irreparable and does not provide an adequate basis for denying injunctive relief.”), and that the specific financial harm of TransCanada should not be accorded appreciable weight because it was “self-inflicted,” see id. at 54 (“TransCanada’s injuries are ‘self-inflicted’ and it assumed the risk that it would not receive its permits as soon as expected.”).
However, as an initial matter, Appellants’ assertion that injunctive relief can *892 not be denied based on a weighing of economic harm is mistaken. The Supreme Court has recognized that financial harm can be weighed against environmental harm — and in certain instances outweigh it. See Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (“And on the other side of the balance of harms was the fact that the oil company petitioners had committed approximately $70 million to exploration ... which they would have lost without chance of recovery had exploration been enjoined.”). Indeed, we too have recognized the appropriateness of weighing financial harm against environmental harm. See Wilderness Workshop, 531 F.3d at 1231 (concluding that the district court did not abuse its discretion in according greater weight in the balancing of harms to the public’s interest in gas production and also certain financial interests, over the threatened environmental injuries); see also Davis, 302 F.3d at 1116 (concluding that “the environmental harms ... out-weighted] the legitimately incurred [financial] costs ... resulting from an injunction”).
In their attempt to minimize the harms a preliminary injunction would inflict on Appellees, Appellants endeavor to challenge the district court’s reasoning. After acknowledging that the district court found that TransCanada had already spent over $500 million on the Gulf Coast Pipeline and that the injunction (if implemented) would cost TransCanada significant sums, Appellants have suggested that the district court erred because it “failed to note that Trans-Canada spent these funds and entered into contracts [to build the Gulf Coast Pipeline] before receiving Corps approval.”[4] Aplt. Opening Br. at 54. This, say Appellants, makes Appellees’ financial harm “self-inflicted” and thus it should not be accorded weight in the balance of harms. Assuming arguendo that Appellants’ argument amounts to an assertion of legal error, see Aplt. Br. at 11 (“The district court committed legal error and abused its discretion in weighing the equities[.]” (initial capitals and underlining omitted)), we find that no such error occurred.
As we discuss below, there is some support in judicial decisions in our circuit and elsewhere for the notion that “self-inflicted” harm should not be accorded weight in the balance of harms. However, Appellants do not direct us to any cases that would cause us on these facts to disregard TransCanada’s financial harms as “self-inflicted.” Appellants principally rely on Davis, where, in assessing the balance of harms, we concluded that much of the financial harm to the state defendants— who opposed the injunction — which was caused by their entry into certain contracts, should not be accorded appreciable weight because it was “self-inflicted.” See 302 F.3d at 1112-13, 1116. Appellants’ reliance on Davis, however, is misguided.
*893 A close reading of Davis reveals that what led us to brand the state defendants’ harm with the “self-inflicted” label, and decline to weigh it, was the fact that the harm-inducing contractual conduct of those defendants, which preceded the decisions of the federal agency defendant sought to be enjoined, was predicated on the federal agency’s improper actions, and the impropriety of those actions was attributable to the state defendants. As we characterized the situation in Davis, “the state [defendants] involved in this case ha[d] ‘jumped the gun’ on the environmental issues [to be decided by the federal agency defendant] by entering into contractual obligations that anticipated a pro forma [federal agency] result. In this sense, the state defendants are largely responsible for their own harm.” Id. at 1116 (emphasis added). The state defendants expected a “pro for-ma result” because they had been knowingly collaborating with the federal agency defendant while it improperly “prejudged the NEPA issues.” Id. at 1112; see Forest Guardians v. U.S. Fish & Wildlife Serv., 611 F.3d 692, 713 (10th Cir.2010) (detailing the facts and holding of Davis, and noting that “Davis indicates that if an agency predetermines the NEPA analysis by committing itself to an outcome, the agency likely has failed to take a hard look at the environmental consequences of its actions due to its bias in favor of that outcome and, therefore, has acted arbitrarily and capriciously”).
In other words, defendants’ harm-inducing contractual conduct was disregarded as “self-inflicted” in Davis (at least primarily) because it was knowingly predicated upon the federal agency defendant’s improper or wrongful conduct in predetermining its environmental decisions, and not simply because the conduct occurred prior to the federal agency’s environmental decisions. In support of this reading of Davis, it is noteworthy that the only case that Davis cites in support of its “self-inflicted” holding is a decision (in an unrelated commercial context) by the Third Circuit that focused on the wrongfulness vel non of the conduct claimed to have produced the financial harm at issue in deciding whether to disregard that harm as “self-serving.” See Pappan Enters., Inc. v. Hardee’s Food Sys., Inc., 143 F.3d 800, 806 (3d Cir.1998); see also Davis, 302 F.3d at 1116 (relying on Pap-pan Enters.). In Pappan Enterprises, the Third Circuit ultimately declined to disregard the financial harm of the defendants seeking the preliminary injunction as “self-inflicted,” because the court could not directly tie the asserted financial harm to any legally cognizable misconduct by defendants. See Pappan Enters., 143 F.3d at 806-07 (“We believe that [defendants’] irreparable injury is not self-inflicted.”). In sum, it should not be surprising that, in engaging in the quintessentially equitable task of balancing the harms, we took into account in Davis whether the financial harms at issue stemmed from wrongful conduct, in deciding whether they could be properly disregarded as “self-inflicted.” Cf. Inst. of Cetacean Research v. Sea Shepherd Conservation Soc’y, 725 F.3d 940, 947 (9th Cir.2013) (“An injunction is an equitable remedy. While the Winter factors ‘are pertinent in assessing the propriety of any injunctive relief,’ traditional equitable considerations such as laches, duress and unclean hands may militate against issuing an injunction that otherwise meets Wmfer’s requirements.” (emphasis added) (citations omitted) (quoting Winter, 555 U.S. at 32, 129 S.Ct. 365)); Shondel v. McDermott, 775 F.2d 859, 868 (7th Cir.1985) (“Today, ‘unclean hands’ really just means that in equity as in law the plaintiffs fault, like the defendant’s, may be relevant to the question of what if any remedy the plaintiff is entitled to.”); *894 Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 480 (1st Cir.2009) (“[W]e are skeptical of those who seek equitable relief when they themselves have engaged in misconduct.”).
Viewed in this light, Davis is inapposite; there is no suggestion of similar misconduct by TransCanada and the Corps here. In particular, Appellants do not argue that TransCanada entered into contractual arrangements prior to the Corps’s approval of the Gulf Coast Pipeline with the expectation that the approval would be “a pro forma result” — that is, the product of the Corps’s improper predetermination or prejudgment of the relevant issues. Cf. Silverton Snowmobile Club v. U.S. Forest Serv., 433 F.3d 772, 781 n. 2 (10th Cir.2006) (discerning no predetermination because “the agencies had no preexisting agreement with any user group”); see also Wyoming, 661 F.3d at 1264 (“Th[e] high standard articulated in Forest Guardians makes clear that predetermination is different in kind from mere subjective impartiality.” (quoting Forest Guardians, 611 F.3d at 714) (internal quotation marks omitted)). Therefore, Appellants’ reliance on Davis is misguided.
Appellants also support their “self-inflicted” argument with the Eighth Circuit’s decision in Sierra Club v. U.S. Army Corps of Eng’rs, 645 F.3d 978 (8th Cir.2011). There, the Eight Circuit held that the district court did not abuse its discretion in balancing the harms in favor of an injunction, at least in part, because the financial harm to the party opposing the injunction was “largely self inflicted.” See id. at 996-97. That decision, however, is legally and factually distinguishable; accordingly, Appellants’ reliance on Sierra Club is also misplaced. On the legal front, Sierra Club relied exclusively upon Davis for its “self-inflicted” harm conclusion. Id. at 997. And, as we have discussed, Davis’s “self-inflicted” harm holding was principally animated by misconduct concerns that are not present here. Therefore, insofar as Sieira Club based its holding on Davis, it is legally distinguishable. Sierra Club also involved factual circumstances that are markedly different than those found in this case. There, the party opposing the injunction began actual construction of a power plant over one year before a CWA permit was issued and was warned by the Corps that this construction would be done “at [their] own risk.” See id. at 996-97. In contrast, here, while TransCanada’s mobilization for construction of the Gulf Coast Pipeline began prior to the Corps’s authorization, the undisputed evidence demonstrates that TransCana-da did not begin actual construction of the pipeline until after all three Corps offices had approved construction. Accordingly, Sierra Club is also factually distinguishable. In sum, although we acknowledge that there is some support in judicial decisions in our circuit and elsewhere for the idea that “self-inflicted” harm should not be accorded weight in the balance of harms, Appellants do not point us to any cases that would lead us to disregard TransCanada’s financial harms as “self-inflicted” here.
Consequently, we are essentially left with an argument by Appellants that involves a recitation of the various harms falling on each side of the scale. In our view, such an argument amounts to a tacit request for us to balance the harms anew. This, we will not do. Our focus is properly on whether the district court’s balancing of harms manifested an abuse of discretion; simply pointing to evidence in the record that would support a different balancing of the harms is not good enough. See Winnebago Tribe of Neb. v. Stovall, 341 F.3d 1202, 1206 (10th Cir.2003) (stating that a party’s “argument concerning the balance of harms ... lacks merit, [because it] ef *895 fectively rais[es] only a difference of opinion as to outcome”).
In other words, when reviewing a district court’s balancing of the harms for an abuse of discretion, our charge is only to determine whether the balancing that the district court performed was within the range of permissible choices, not whether our own balancing would lead to a different result. See Re/Max N. Cent., Inc. v. Cook, 272 F.3d 424, 429 (7th Cir.2001) (“The question for us is whether the judge exceeded the bounds of permissible choice [in granting or denying a preliminary injunction], not what we would have done if we had been in his shoes.”) (quoting Wis. Music Network, Inc. v. Muzak Ltd. P’ship, 5 F.3d 218, 221 (7th Cir.1993) (internal quotation marks omitted)); Oil, Chem. & Atomic Workers Int’l Union, AFL-CIO, Local 2-286 v. Amoco Oil Co., 885 F.2d 697, 703 (10th Cir.1989) (“[Abuse of discretion] review requires that we carefully examine the district court’s exercise of its discretion, but ‘we may not ... substitute our own judgment for that of the trial court.’”) (omission in original) (quoting Tri-State Generation v. Shoshone River Power, Inc., 805 F.2d 351, 354-55 (10th Cir.1986)); see also Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 393-94, 112 S.Ct. 748, 116 L.Ed.2d 867.(1992) (O’Connor, J., concurring) (describing appellate review of equitable decrees as “necessarily a task that entails substantial discretion, particularly in a case like this one, where the District Court must make complex decisions requiring the sensitive balancing of a host of factors. As a result, an appellate court should examine primarily the method in which the District Court exercises its discretion, not the substantive outcome the District Court reaches. If the District Court takes into account the relevant considerations ... and accommodates them in a reasonable way, then the District Court’s judgment will not be an abuse of its discretion, regardless of whether an appellate court would have reached the same outcome in the first instance”); Zervos v. Verizon N. Y., Inc., 252 F.3d 163, 168-69 (2d Cir.2001) (“When a district court is vested with discretion as to a certain matter, it is not required by law to make a particular decision. Rather, the district court is empowered to make a decision-of its choosing — that falls within a range of permissible decisions.”); cf. United States v. Lambert, 695 F.2d 536, 540 (11th Cir.1983) (“A review of the record reveals that although the district court might have issued an injunction, a denial was clearly within its discretion.”).
Thus, Appellants have woefully failed to carry their burden of demonstrating how the district court’s balancing of harms amounted to an abuse of its discretion. That said, in any event, our review of the record suggests that the district court’s balancing was well within the bounds of its discretion. The district court concluded that the environmental harm was “minimal” [5] and that the financial harm to TransCanada was significant. Furthermore, the court made specific factual findings to support these conclusions that have clear support in the record, and Appellants do not argue to the contrary. In this regard, we highlight two of the key factual findings. First, we focus on the district *896 court’s finding that TransCanada has spent in excess of $500 million on the pipeline and “that further delay will cost hundreds of thousands of dollar each day.” Aplt.App. at 2001. Appellees put into the record undisputed evidence that they had already spent $800 million on the Gulf Coast Pipeline and that an injunction would cost them at least hundreds of thousands of dollars per day. See id at 87 (Decl. of Robert E. Jones, filed July 9, 2012); see also id at 995 (Decl. of David L. Penning, filed July 31, 2012); id at 1005 (Decl. of Paul E. Führer, filed July 31, 2012).
Second, as for the district court’s finding that “this is all over a loss of waters of the United States of less than one acre ... over the entire distance of the pipeline,” id at 2002, we reference the Corps’s analysis of the Gulf Coast Pipeline that demonstrated the total permanent loss of waters over the entire length of the pipeline would be 0.68 acres and any other water losses would be temporary. See id at 1728 (noting that 0.63 acres of water will be permanently lost in the Galveston district); id at 1783 (correcting an error in the Tulsa district’s original approval letter and noting that 0.05 acres of permanent water loss will occur in the Tulsa district); id at 1821 (noting that there will be no permanent water loss in the Fort Worth district). Thus, there was clear support in the record for these two key district court findings. In sum, because “the district court made specific [factual] findings to support its conclusion [regarding the balance of harms], none of which rises to the level of clear error[,][t]he court was ... well within the bounds of its discretion.” Stovall, 341 F.3d at 1206.
In conclusion, we reiterate that injunc-tive relief is an extraordinary remedy; a district court should only provide such relief when a party’s right to it is clear. See Winter, 555 U.S. at 22, 129 S.Ct. 365. When a district court denies this extraordinary remedy, we will overturn its decision only if we have a definite and firm conviction that the decision was outside the zone of permissible choice. See Somerlott, 686 F.3d at 1152. Appellants have failed to carry their burden of demonstrating that the district court’s determination of the balance of harms factor departed from this zone. This failure ineluctably leads to our affirmance of the district court’s decision.
Ill
For the foregoing reasons, we AFFIRM the district court’s denial of Appellants’ request for a preliminary injunction.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

. TransCanada Corp., TransCanada Keystone Pipeline LP, (collectively, "TransCanada”), Interstate Natural Gas Association, American Gas Association, Association of Oil Pipe Lines, American Petroleum Institute, and Utility Water Act Group are Intervenors-Appellees in this suit. Because they filed a joint brief with the Corps, our references to “Appellees,” for purposes of this appeal, include both the Corps and Intervenors-Appellees.

. The parties do not dispute that the harm to TransCanada — which was permitted to intervene as of right and without conditions, pursuant to Federal Rule of Civil Procedure 24(a)(2) — is properly taken into account when considering the balance of harms. Accordingly, we need not definitively opine here on whether such consideration is proper. Arguably, we have previously intimated as much. See Wilderness Workshop, 531 F.3d at 1231 (concluding that the district court’s balancing of harms that included consideration of the harm to an intervenor was not an abuse of discretion); Nat’l Indian Youth Council v. Andrus, 623 F.2d 694, 696 (10th Cir.1980) (considering the "harm to the defendants and intervenors,” and concluding that the “harm to the intervenors [was] impressive”). And, consistent with that view, we have explicitly held that, when a party intervenes as of right pursuant to Rule 24(a), "it becomes a full participant in the lawsuit and is treated just as if it were an original party.” Alvarado v. J.C. Penney Co., 997 F.2d 803, 805 (10th Cir.1993) (quoting Schneider v. Dumbarton Developers, Inc., 767 F.2d 1007, 1017 (D.C.Cir.1985)) (internal quotation marks omitted); see 7C Charles Alan Wright et al., Federal Practice & Procedure § 1920, at 609 (3d ed. 2007) ("Unless conditions have been imposed, the intervenor is treated as if the intervenor were an original party and has equal standing with the original parties.”); cf. Comanche Indian Tribe of Okla. v. Hovis, 53 F.3d 298, 303 (10th Cir.1995) (holding, for the purposes of collateral estoppel, that an individual “became a party in the federal district court once she intervened in the juvenile proceeding,” and citing Alvarado for this proposition). *891 See id. at 1246 ("Rule 52(a) does not require 'over-elaboration of detail or particularization of facts'....”) (quoting Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1228 (1st Cir.1994)). The district court identified the harms it thought salient, attributed weight to them, and concluded that the balance did not favor granting an injunction. This is sufficient and consonant with the well-settled principle that the district court "need only make brief, definite, pertinent findings and conclusions upon the contested matters." OCI Wyo., 479 F.3d at 1204 (citation omitted) (internal quotation marks omitted). In contrast, instances where we have concluded that a district court’s findings were insufficient for meaningful appellate review frequently have involved a court's mere statement of its ultimate conclusion without an accompanying articulation of the factual basis supporting its conclusion, or a court’s complete failure to specifically address a relevant issue. See, e.g., id. at 1204-05 (holding that the district court’s findings were insufficient because it only stated "what [it] found,” but not “why [it] ruled as it did”); Pierce, 253 F.3d at 1245-46 (finding that the district court failed to comply with its Rule 52(a) obligations when it merely stated its conclusion with respect to each of the four preliminary injunction factors); cf. Aid for Women v. Foulston, 441 F.3d 1101, 1120-21 (10th Cir.2006) (finding that the district court abused its discretion because it "did not even evaluate whether there would be irreparable injury,” and with respect to the balance of harms, it "did not even identify any possible harm to the Defendants” and only made a "vague” statement regarding the harm to plaintiff).

. We note that, although succinct, the district court's findings were sufficient to allow for meaningful appellate review. Federal Rule of Civil Procedure 52(a) requires a district court, when granting or denying an interlocutory injunction, to make findings of fact and conclusions of law "sufficient to make possible meaningful appellate review.” FTC v. Kuykendall, 371 F.3d 745, 756 (10th Cir.2004) (en banc). To comply with Rule 52(a), a district court’s findings of fact must be " 'sufficient to indicate the factual basis for the court’s general conclusion as to ultimate facts' so as to facilitate a 'meaningful review’ of the issues presented.” Wolfe v. N.M. Dep’t of Human Servs., 69 F.3d 1081, 1087 (10th Cir.1995) (quoting Otero v. Mesa Cnty. Valley Sch. Dist., 568 F.2d 1312, 1316 (10th Cir.1977)); see OCI Wyo., L.P. v. PacifiCorp, 479 F.3d 1199, 1204 (10th Cir.2007) ("Rule 52(a) does not require the district court to set out its findings and conclusions in excruciating detail.... '[T]he judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for overelaboration of detail or particularization of facts.' ” (quoting Fed.R.Civ.P. 52 advisory committee’s note on 1946 Amendments)).
Although the sufficiency of the district court’s findings was not raised by either party, we were constrained to inquire regarding the matter, to satisfy ourselves that there is an adequate basis for our review. See Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1245 (10th Cir.2001) (noting that we "are compelled to address the issue because, without adequate findings of fact and conclusions of law, appellate review is in general not possible”). And we are satisfied on this score. Although the district court’s findings with respect to the balance of harms were not expansive, they were sufficient to comply with its obligations under Rule 52(a).

. Appellants also state that the district court erred because it "failed to recognize that TransCanada could mitigate its harm by working on other portions of the project while an injunction prohibited construction in aquatic areas.” Aplt. Opening Br. at 12. However, Appellants make no effort to develop this contention of error; they do not mention it again in their briefing. Accordingly, we decline to consider it. See, e.g., Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir.2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant’s opening brief.”). Furthermore, in any event, Appellants’ observation about mitigation does nothing to directly call into question the district court’s undisputed finding that TransCanada already had expended more that $500 million on the pipeline project by the time of the hearing, and that the injunction, if implemented, would cost TransCanda a great deal of money, running into the hundreds of thousands of dollars per day.

. As Appellants note, the Supreme Court has stated that if environmental harm is ‘‘sufficiently likely, ... the balance of harms will usually favor the issuance of an injunction to protect the environment.” Vill. of Gambell, 480 U.S. at 545, 107 S.Ct. 1396. But this is merely an observation, not an inexorable mandate. Indeed, in Winter, the Supreme Court held that even assuming there were irreparable environmental harms, the district court abused its discretion in finding that they outweighed the Navy’s interests in realistic training. See 555 U.S. at 23-31, 129 S.Ct. 365.