*738 ORDER AND JUDGMENT *
Gregory A. Phillips Circuit Judge
In 2013, three of the nation’s four largest contact-lens manufacturers implemented uniform pricing policies (UPPs) to set minimum retail prices for contact-lens sales in all fifty states. In 2015, Utah enacted Utah Code Ann. § 58-16a~905.1, which prohibited manufacturers from enforcing their UPPs against retailers in Utah. In effect, the statute freed retailers in Utah to sell contact lenses at prices lower than the prices manufacturers had set and mandated in their UPPs. In the district court, the manufacturers sought a preliminary injunction to stop Utah from applying section 58-16a-905.1. They argued that this statute violates the Commerce Clause. We affirm the district court’s denial of a preliminary injunction.
BACKGROUND
1. The Anticompetitive Nature of the Contact-Lens Industry
Because contact lenses are medical devices, consumers cannot buy them without a valid prescription from an eye-care professional. In the United States, four contact-lens manufacturers control 98.5% of the contact-lens market—Johnson & Johnson Vision Care, Inc.; Alcon Laboratories, Inc.; Bausch & Lomb Incorporated; and CooperVision Inc. The first three companies listed (“Manufacturers”) are the plaintiffs in this case. None of the Manufacturers have offices in Utah or manufacture contact lenses there.
The district court found that the contact-lens industry is anticompetitive, partly because eye-care professionals prescribe, and often sell, brand-specific contact-lenses. It noted that “[i]n almost no other medical context does the prescriber of a medical device have the power to control both the brand the patient must use and also sell the particular medical device in the same breath.” R. vol. 4 at 759. Compounding this problem, in all states except now in Utah, contact-lens manufacturers by their UPPs set minimum retail sales prices for contact lenses. The UPPs stop retailers from selling contact lenses for less than the UPPs’ minimum-required (and artificially high) prices.
Though not always so, consumers now have a right to a copy of their contact-lens prescription, enabling them to buy contact lenses from sellers other than their prescribing eye-care professionals. For instance, with their prescriptions, consumers may now buy their contact-lenses from other retailers, including eye-care retailers (such as LensCrafters), mass-merchandise retailers (such as Costco or Wal-Mart), and Internet retailers (such as 1-800-Con-tacts or Lens.com).
Because of the industry’s anticompeti-tive leanings, contact-lens manufacturers have faced federal and state legislation challenging their anticompetitive behavior, as well as antitrust lawsuits. For example, in the 1990s, attorneys general from 32 states and a national class of consumers sued Johnson & Johnson, Bausch & Lomb, and CIBA Vision Corporation, alleging that those companies had conspired with eye-care professionals to restrain competition and to protect eye-care professionals from retail competition. See In re Disposable Contact Lens Litig., Nos. 3:00-94 MD 1030, 2001 WL 203964, at *1 (M.D. Fla. Jan. 5, 2001); In re Disposable Contact Lens Antitrust Litig., No. MDL 1030, 2001 WL 493244 (M.D. Fla. Feb. 8, 2001); In re *739 Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524 (M.D. Fla. 1996). In 2001, the parties agreed to “broad injunctive relief requiring the [manufacturers] to sell contact lenses to non-ECP [eye-care professional] retailers in a ‘commercially reasonable’ and ‘nondiscriminatory’ manner for at least five years.” R. vol. 4 at 761.
In 2003, Congress enacted the Fairness to Contact Lens Consumers Act, one provision of which required eye-care professionals to provide patients with their prescriptions. See 15 U.S.C. § 7601. The Act aimed to increase retail competition by allowing consumers to buy contact lenses from retailers other than their prescribing eye-caré professionals. Id. And in 2006, Utah enacted the Contact Lens Consumer Protection Act, which sought to continue the relief afforded by the injunction issued in the In re Disposable Contact Lens Antitrust Litigation cases. See Utah Code Ann. §§ 58-16a-901-902. To ensure that retailers selling contact lenses to Utah consumers would have an adequate range of supply, the Utah Act required manufacturers to certify that their brands of contact lenses sold in Utah were available in a commercially reasonable and nondiscriminatory maimer to different distribution channels. These channels included Internet retailers, mail order companies, department stores, and mass merchandise outlets. Id, §§-902,-904(1).
2. Uniform Pricing Policies
In 2013, the Manufacturers implemented nationwide UPPs, which set minimum retail prices for their contact lenses. Under the UPPs, the Manufacturers reserved a right not to supply contact lenses to any retailer selling at prices below the UPP’s minimum prices.
The Manufacturers claim that their UPPs result in lower prices for contact lenses. For instance, Johnson & Johnson claims that the UPPs save contact lens retailers and buyers the trouble of a complex rebate system. Under this rebate system, consumers received rebate forms upon purchase to complete and return for Manufacturer rebates. Johnson & Johnson contends that few consumers took the necessary steps to receive the available rebates.
The Manufacturers also claim that UPPs improve patient care. For example, Johnson & Johnson argues that UPPs allow eye-care professionals to “devote more time to treating patients and less time to monitoring prices and rebates offered by retailers, and the consumer knows there is no need to shop around for a better bargain.” Johnson & Johnson Opening Br. at 4. And Alcon argues that UPPs benefit eye-care professionals by advising them “about the attributes of [the] products and of encouraging them, in turn, to inform patients of the product’s potential benefits.” Alcon Opening Br. at 10. The Manufacturers also tout the UPPs for “eliminating] the need for discussions with eye doctors about other retailers’ prices. Consumers are assured that if their [eye-care professional] or any other retailer is charging the minimum price, there is no need to shop around for a better bargain.” R. vol. 4 at 762.
In contrast, Costco and 1-800-Contacts argue that UPPs serve to “insulate [eye-care professionals] from retail competition” and encourage eye-care professionals to prescribe a specific brand of contact lenses. Joint Br. of 1-800 Contacts, Inc. and Costco Wholesale Corporation at 7. They claim that UPPs restrict consumers’ options and increase prices. They also assert that UPPs benefit eye-care professionals by preventing others—including online retailers like 1-800-Contacts—from competing with lower prices.
*740 3. Utah Code Ann. § 58-16a-905.1
In 2015, as mentioned, Utah passed a law preventing Manufacturers from fixing retail contact-lens prices and from discriminating against contact-lens retailers selling lenses below the UPPs’ minimum prices:
A contact lens manufacturer or a contact lens distributor may not:
(1) take any action, by agreement, unilaterally, or otherwise, that has the effect of fixing or otherwise controlling the price that a contact lens retailer charges or advertises for contact lenses; or
(2) discriminate against a contact lens retailer based on whether the contact lens retailer:
(a) sells or advertises contact lenses for a particular price;
(b) operates in a particular channel of trade;
(c) is a person authorized by law to prescribe contact lenses; or
(d) is associated with a person authorized by law to prescribe contact lenses.
Utah Code Ann. § 58-16a-905.1. The Utah legislature also amended section 58-16a-906 to provide that “[t]he attorney general may bring a civil action or seek an injunction and a civil penalty” against anyone violating section 58-16a-905.1. Id. § 58-16a-906(2).
4. Present Lawsuit
On April 13, 2015, about three weeks before section 58-16a-905.1’s effective date,[1] Alcon filed this lawsuit seeking declaratory and injunctive relief against the Utah Attorney General to stop him from enforcing section 58-16a-905.1. In support, it argued that the Utah statute violates the Commerce Clause. Alcon filed a preliminary-injunction motion the same day. The next day, Johnson & Johnson and Bausch & Lomb filed separate lawsuits. The district court consolidated the Manufacturers’ lawsuits. On April 17, 2015,1-800 Contacts and Costco intervened. After a hearing, the district court denied the Manufacturers’ request for preliminary injunction, concluding that they had failed to meet any of the necessary showings discussed below.
STANDARD OF REVIEW
“On appeal, we review a district court’s decision to grant a preliminary injunction for abuse of discretion.” Fish v. Kobach, 840 F.3d 710 (10th Cir. 2016). “An abuse of discretion occurs where a decision is premised ‘on an erroneous conclusion of law or where there is no rational basis in. the evidence for the ruling.’” Id. (quoting Awad v. Ziriax, 670 F.3d 1111, 1125 (10th Cir. 2012)). In measuring whether the district court abused its discretion, we review the district court’s factual findings for clear error and its conclusions of law de novo. Id.
DISCUSSION
“[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.” Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (quoting 11A Charles A. Wright *741 & Arthur R. Miller, Federal Practice and Procedure § 2948 (2d ed. 1995)). To obtain a preliminary injunction, the Manufacturers needed to show “(1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party’s favor; and (4) the preliminary injunction is in the public interest.” Verlo v. Martinez, 820 F.3d 1113, 1126 (10th Cir. 2016) (quoting Republican Party of N.M. v. King, 741 F.3d 1089, 1092 (10th Cir. 2013)). The district court weighs these factors, and we limit our review to abuse of discretion. Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007).
1. Likelihood of Success on the Merits
The Manufacturers argue that section 58-16a-905.1 violates the Commerce Clause in three ways: (1) it impermissibly discriminates against out-of-state economic interests; (2) it imposes undue burdens on interstate commerce; and (3) it causes impermissible extraterritorial effects. We conclude that the district court didn’t abuse its discretion in determining that the Manufacturers are unlikely to succeed on any of these claims.
We presume that sections 58-16a-905.1-906 are constitutional. See Doe v. City of Albuquerque, 667 F.3d 1111, 1120 (10th Cir. 2012). And on top of this, we recognize that states may enact their own antitrust laws to supplement federal antitrust laws. “Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies.” California v. ARC America Corp., 490 U.S. 93, 102, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). Generally, state laws that deter anticompetitive conduct are consistent with the broad purposes of federal antitrust laws. Id. Utah enacted section 58-16a-905.1 with this salutary purpose—to deter the Manufacturers’ anticompetitive conduct preventing price competition.
Despite this, the Manufacturers claim that section 58-16a-905.1 violates the Commerce Clause. The Commerce Clause grants Congress power to “regulate Commerce ... among the several States.” U.S. Const, art. I, § 8, cl. 3. In addition to that express authority, the Commerce Clause also implicitly restrains state authority through the dormant Commerce Clause.[2] KT & G Corp. v. Atty. Gen. of State of Okla., 535 F.3d 1114, 1143 (10th Cir. 2008). Whether a state violates the dormant Commerce Clause depends on whether its law improperly interferes with interstate commerce, primarily for economic protectionism. Direct Mktg. Ass’n v. Brohl, 814 F.3d 1129, 1135 (10th Cir. 2016), petition for cert. filed, (Sept. 1, 2016) (No. 16-267).
A state statute may violate the dormant Commerce Clause in three ways:
First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. Second, if the statute does not discriminate against interstate commerce, it will nevertheless be invalidated under the Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970), balancing test if it imposes a burden on interstate commerce incommensurate with the local *742 benefits secured. Third, a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question.
KT & G Corp., 535 F.3d at 1143 (quoting Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 168 (2d Cir. 2005)). We focus our analysis on these recognized dormant Commerce Clause violations. And we conclude that the district court didn’t abuse its discretion by holding that the Manufacturers failed to show that they are likely to succeed on the merits of their dormant Commerce Clause claims.[3]
A. The district court properly exercised its discretion in concluding that section 58-16a-905.1 doesn’t discriminate against interstate commerce.
“State laws discriminating against interstate commerce on their face are virtually per se invalid.” Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 575, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (internal quotations omitted). And discrimination “simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.” KT & G Corp., 535 F.3d at 1143 (quoting United Haulers Ass’n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 338, 127 S.Ct. 1786, 167 L.Ed.2d 655 (2007)). We look to see whether the state statute “dis-criminat[es] between transactions on the basis of some interstate element.” Comptroller v. Wynne, — U.S. -, 135 S.Ct. 1787, 1794, 191 L.Ed.2d 813 (2015) (quoting Bos. Stock Exch. v. State Tax Comm’n, 429 U.S. 318, 332 n.12, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977)).
“The party claiming discrimination must show that the state law benefits local actors and burdens out-of-state actors, and the result must alter the competitive balance between in-state and out-of-state firms,” Direct Mktg. Ass’n, 814 F.3d at 1142 (internal quotations. and alteration omitted). Supreme Court cases reveal how states can impermissibly discriminate against interstate commerce. For instance, in Oregon Waste Systems, Inc. v. Department of Environmental Quality, 511 U.S. 93, 96, 99-100, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994), the Supreme Court concluded that a state statute discriminated against interstate commerce by imposing a higher surcharge on disposal of solid-waste “generated out-of-state” than the surcharge for solid waste generated in-state. And in Hughes v. Oklahoma, 441 U.S. 322, 336-37, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979), the Supreme Court concluded that a state statute forbidding the transportation of minnows outside of the state for sale discriminated against interstate commerce. In Wyoming v. Oklahoma, 502 U.S. 437, 455, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992), the Supreme Court struck down an Oklahoma statute that reserved a segment of the Oklahoma coal market for Oklahoma-mined coal, to the exclusion of coal mined in other states. Similarly, in West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 193, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994), the Supreme Court explained that a “paradigmatic example of a law discriminating against interstate commerce is the protective tariff or customs duty, which taxes goods imported from other States, but does not tax similar products produced in State.” Finally, in Healy v. Beer Institute, Inc., 491 U.S. 324, 341, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989), the Supreme Court *743 concluded that a Connecticut statute discriminated against interstate commerce by treating Connecticut and out-of-state beer producers differently. In particular, the statute allowed Connecticut wholesalers not selling in states other than Connecticut to charge any price in Connecticut, while limiting beer producers selling beer outside Connecticut to the price they charged in those other states. Id. In each of these cases, the state laws imposed restrictions or burdens on out-of-state or interstate parties to benefit in-state interests.
Here, the Utah statute is easily distinguishable from those offending statutes at issue in the cited cases. The Manufacturers claim that section 58-16a-905.1 violates the dormant Commerce Clause by discriminating against interstate commerce in favor of retailers in Utah. In support, they contend that section 58-16a-905.1 favors retailers in Utah over out-of-state manufacturers by taking away pricing authority from the out-of-state manufacturers and giving it to retailers in Utah. And they claim that section 58-16a-905,l “impermis-sibly confers on Utah retailers a special exemption from manufacturers’ pricing policies that no other retailers enjoy.” Johnson & Johnson Opening Br. at 30. But the Manufacturers cannot identify how section 58-16a-905.1 places burdens on contact-lens sales not involving retailers in Utah.
Unlike the statutes in the above-cited cases, section 58-16a-905.1 doesn’t require out-of-state retailers to charge more for contact lenses than retailers charge in Utah. Nor does it burden out-of-state retailers. And the Manufacturers certainly haven’t contended that section 58-16a-905.1diminishes the total interstate sales by Manufacturers. The Manufacturers don’t identify any way that section 58-16a-905.1treats in-state retailers differently from out-of-state retailers or would treat in-state manufacturers differently from out-of-state manufacturers. And finally, section 58-16a-905.1 doesn’t favor retailers in Utah over interstate retailers. See Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 125, 98 S.Ct 2207, 57 L.Ed.2d 91 (1978) (rejecting Commerce Clause challenge when all dealers were treated the same). Instead, section 58-16a-905.1 treats all retailers in Utah the same, regardless of whether the retailers also sell in other states.
In determining whether a statute discriminates against interstate commerce in favor of intrastate commerce, “[i]t is not necessary to look beyond the text of [the] statute.... ” Camps Newfound/Owatonna, Inc., 520 U.S. at 575, 117 S.Ct. 1590. Here, we agree with the district court that section 58-16a-905.1 solely governs the prices contact-lens retailers selling in Utah can charge. The district court didn’t err in relying on the Utah Attorney General’s interpretation of sections 58-16a-905.1 or 58-16a-906—saying that the statutes don’t apply to the conduct of manufacturers or retailers selling outside Utah. If retailers or eye-care professionals selling contact lenses outside of Utah can’t compete with the lower price available from retailers in Utah, that’s not Utah’s fault. Section 58-16a-905.1 doesn’t require retailers in other states to sell at higher prices—it doesn’t address retailers in other states at all. Nor does the Utah statute somehow restrict other states from following its lead. The Commerce Clause gives neither the Manufacturers nor retailers selling contact lenses outside Utah grounds to repeal Utah’s law governing business in Utah.
Alcon also argues that section 58-16a-905.1necessarily discriminates against out-of-state manufacturers because all manufacturers are located outside of Utah. In Exxon Corp., 437 U.S. 117, 98 S.Ct. 2207, the Supreme Court rejected a similar ar *744 gument. There, the Court addressed a Commerce Clause challenge concerning a Maryland statute prohibiting producers or refiners of petroleum from operating any retail service stations in Maryland. Id. at 120-21, 98 S.Ct. 2207. All petroleum producers and refiners were located outside of Maryland so the statute affected only out-of-state producers and refiners. Id. at 125, 98 S.Ct. 2207. In rejecting the producers and refiners’ arguments, the Court explained that the statute “creates no barriers ... against interstate independent dealers; it does not prohibit the flow of interstate goods, place added costs upon them, or distinguish between in-state and out-of-state companies in the retail market.” Id. at 126, 98 S.Ct. 2207. The Court observed that “[sjince Maryland’s entire gasoline supply flows in interstate commerce and since there are no local producers or refiners, such claims of disparate treatment between interstate and local commerce would be meritless.” Id. at 125, 98 S.Ct. 2207.
Here, similar to the situation with the petroleum producers and refiners in Exxon, all the contact-lens manufacturers are located outside of Utah. Thus, section 58-16a-905.1 cannot favor manufacturers in Utah over out-of-state manufacturers. Instead, “since there are no local [manufacturers], such claims of disparate treatment ... would be meritless.” Id. For these reasons, the district court didn’t abuse its discretion in concluding that the Manufacturers were unlikely to succeed on the merits of their claim alleging discrimination against interstate commerce.
B. The district court properly exercised its discretion in concluding that section 58-16a~905.1 doesn’t impose an undue burden on interstate commerce.
“Whether a state law unduly burdens interstate commerce is a separate inquiry from whether a state law discriminates against interstate commerce.” Direct Mktg. Ass’n, 814 F.3d at 1145. “A state law that does not discriminate against interstate commerce may still be invalidated under the dormant Commerce Clause if it puts a burden on interstate commerce that is ‘clearly excessive in relation to the putative local benefits.’ ” Quik Payday, Inc. v. Stork, 549 F.3d 1302, 1309 (10th Cir. 2008) (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)). In determining whether the burden is clearly excessive in relation to the putative local benefits, we apply the Pike balancing test. Kleinsmith v. Shurtleff, 571 F.3d 1033, 1040 (10th Cir. 2009). The Pike balancing test requires us to consider four factors:
(1) the nature of the putative local benefits advanced by the [statute]; (2) the burden the [statute] imposes on interstate commerce; (3) whether the burden is “clearly excessive in relation to” the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on interstate commerce.
Blue Circle Cement, Inc. v. Bd. of Cty. Comm’rs of Rogers, 27 F.3d 1499, 1512 (10th Cir. 1994) (quoting Pike, 397 U.S. at 142, 90 S.Ct. 844). The Manufacturers bear the burden of establishing that section 58-16a-905.1 fails the Pike balancing test. See Kleinsmith, 571 F.3d at 1043 (“The person challenging the statute bears the burden of establishing a Pike violation.”). In reviewing the district court’s analysis, we review the district court’s factual findings for clear error. Fish, 840 F.3d 710.
Here, the district court identifies two putative local benefits of section 58-16a-905.1: (1) it returns intrabrand competition to the contact-lens market in Utah; and (2) it allows retailers in Utah to charge lower prices to consumers buying contact-lenses *745 in Utah. The district court concluded that the Manufacturers’ burden to comply with section 58-16a-905.1 was in line with the burden imposed by other state antitrust laws. Balancing the Pike factors, the district court concluded that the Manufacturers were unlikely to succeed on the merits of their claims.
The Manufacturers claim that section 58-16a-905.1 burdens interstate commerce by “interfer[ing] with the manufacturers’ pricing policies as they apply to retail sales ... in all 50 states.” Alcon Opening Br. at 47. “Although evidence regarding a particular company may be suggestive, the benefit-to-burden calculation is based on the overall benefits and burdens that the statutory provision may create, not on the benefits and burdens with respect to a particular company or transaction.” Quik Payday, Inc., 549 F.3d at 1309. So we focus our analysis on the overall putative local benefits and the burdens on interstate commerce, rather than the Manufacturers’ specific burdens.
The record supports the district court’s factual findings concerning the local benefits and burdens of section 58-16a-905.1. Thus, we see no clear error. And we agree with the district court that the Manufacturers haven’t shown that any burden clearly exceeded the local benefits. Again, in Exxon, the Supreme Court addressed similar arguments that the Maryland law burdened interstate companies by disallowing interstate producers and refiners from operating service stations in Maryland. 437 U.S. at 127, 98 S.Ct. 2207. The Supreme Court rejected this argument in these terms:
Some refiners may choose to withdraw entirely from the Maryland market, but there is no reason to assume that their share of the entire supply will not be promptly replaced by other interstate refiners. The source of the consumers’ supply may switch from company-operated stations to independent dealers, but interstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another.
Id. The same analysis applies in our case. The Manufacturers have presented no evidence that section 58-16a-905.1 will reduce the nationwide total sales of contact lenses. In fact, a basic law of economics tells us that increased sales follow lower prices. So following the Supreme Court’s reasoning in Exxon, we conclude that section 58-16a-905.1 doesn’t impose an undue burden on interstate commerce.
C. The district court didn’t err in concluding that section 58-16a-905.1 will have no impermissible extraterritorial effects.
“[T]he ‘Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State’s borders, whether or not the commerce has effects within the State.’” Healy, 491 U.S. at 336, 109 S.Ct. 2491 (quoting Edgar v. MITE Corp., 457 U.S. 624, 642-43, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982)). Under this rule, “a State may not adopt legislation that has the practical effect of establishing ‘a scale of prices for use in other states.’ ”[4] Id. (quoting Bald *746 win v. G.A.F. Seelig, Inc., 294 U.S. 511, 528, 55 S.Ct. 497, 79 L.Ed. 1032 (1935)).
The district court concluded that section 58-16a-905.1 has no extraterritorial application, that is, it will not apply to sales occurring outside of Utah. The Manufacturers claim that section 58-16ar-905.1 has impermissible extraterritorial effects because all of the manufacturers are located outside of Utah, and because it regulates sales of contact lenses to consumers outside of Utah.[5]
Utah’s section 58-16a-905.1 doesn’t require other states to do anything. They can choose whether to pass similar statutes. Section 58-16a-905.1 reaches no further than contact-lens sales in Utah. When interpreting section 58-16a-905.1, we are guided by the rule of constitutional avoidance. Doe, 667 F.3d at 1120. The district court correctly pointed out that “[u]nder a deeply rooted and longstanding canon of construction, statutes are presumed not to have extraterritorial effect.,.. [UJnless a statute gives a ‘clear indication of an extraterritorial application, it has none.’ ” R. vol. 4 at 766-67 (quoting Nevares v. M.L.S., 345 P.3d 719, 727 (Utah 2015)). Here, nothing in section 58-16a-905.1 provides for extraterritorial application. So we interpret this statute as though it doesn’t apply to retail sales made outside of Utah.
As the district court concluded, relying on the Utah Attorney General’s interpretation, neither section 58-16a-905.1 nor 58-16a-906 regulate the price retailers charge for contact lenses outside of Utah.[6] Retailers outside of Utah are free to sell contact lenses for whatever price they would like, including the prices set by the Manufacturers’ UPPs.
The Manufacturers also claim that section 58-16a-905.1 has extraterritorial effects because it “bars an out-of-state contact lens manufacturer from setting a minimum resale price for the sale of its products by a Utah contact lens retailer to a customer in California.” Alcon Opening Br. at 30. But the Manufacturers’ argument ignores Utah’s interest. Specifically, the Manufacturers ignore the location of the retailer—Utah. Based on their own analysis, section 58-16a-905.1 doesn’t regulate conduct occurring wholly outside of Utah—it only regulates sales from a Utah retailer that is located -within Utah.[7]
*747 We recently explained that to strike down a statute based on its extraterritorial application, a challenger must establish that the statute has three characteristics: “(1) a price control or price affirmation regulation, (2) linking in-state prices to those charged elsewhere, with (3) the effect of raising costs for out-of-state consumers or rival businesses.” Energy and Env’t Legal Inst, 793 F.3d at 1173.
Here, section 58-16a-905.1 doesn’t have these three characteristics. First, unlike the laws involved in several Supreme Court cases on this point, section 58-16a-905.1 isn’t a price control or price affirmation regulation. As examples of cases involving these disallowed regulations, we first point to Baldwin, where New York prohibited out-of-state companies from selling milk in the state unless they purchased their milk at the same price paid to New York dairy farmers. 294 U.S. at 519, 55 S.Ct. 497. And in Brown-Forman Distillers Corp. v. New York State Liquor Authority, New York law required liquor merchants to list their prices monthly and to affirm that their New York prices were no higher than those charged in other states. 476 U.S. 573, 576, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986). In both of these cases, the Supreme Court concluded that the state laws required price affirmation. By contrast, Utah’s section 58-16a-905.1 requires no price affirmation. In fact, the statute doesn’t even control the price of contact lenses sold in Utah. Nothing in section 58-16a-905.1 prevents Manufacturers from selling contact lenses to retailers at whatever price they choose, so long as they don’t discriminate against retailers for selling at prices below those set by the Manufacturers. So we agree with the district court that the Manufacturers likely cannot establish that the Utah statute is a price control or price affirmation regulation.
Nor does section 58-16a-905.1 link retail prices charged in Utah to prices charged elsewhere. In contrast to Baldwin and Brown-Forman Distillers Corp., where the statutes linked the local prices of goods to prices listed in other states, section 58-16a-905.1 contains no such provision. Again, the Manufacturers and all retailers outside of Utah can sell contact lenses at whatever price they choose. And finally, section 58-16a-905.1 doesn’t raise contact-lens prices for consumers buying contact lenses from retailers outside Utah. None of the Manufacturers argue otherwise. Thus, we conclude that the district court properly exercised its discretion in concluding that section 58-16a-905.1 doesn’t have impermissible extraterritorial effects.
Because we conclude that the district court didn’t abuse its discretion in concluding that the Manufacturers are unlikely to succeed on the merits of their claims, it is unnecessary to address the remaining factors of the preliminary injunction standard. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 23-24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); Sierra Club, Inc. v. Bostick, 539 Fed.Appx. 885, 888 (10th Cir. 2013) (“A party seeking a preliminary injunction must prove that all four of the equitable factors weigh in its favor.”).
CONCLUSION
The district court’s decision denying the Manufacturers’ motions for preliminary injunction is affirmed. Because the record before us is limited, we note specifically that we express no opinion on the ultimate merits of this case.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

. We see nothing in the record suggesting that Utah has pursued any enforcement action against any of the Manufacturers. On May 13, 2015, we issued a temporary injunction pending our resolution of this appeal. But on June 12, 2015, after receiving briefing from ali parties on whether to grant an injunction pending appeal, we denied the Manufacturers’ motion for injunction pending appeal and vacated our temporary injunction. So Utah has enforced section 58-16a-905.1 from June 12, 2015 forward.

. For many years, the Supreme Court has read the Commerce Clause to include the "dormant” or "negative” Commerce Clause. Energy and Env’t Legal Inst. v. Epel, 793 F.3d 1169, 1171 (10th Cir. 2015). Using this clause, courts have stricken state laws that unduly interfere with interstate commerce. Id.

. We limit our review to the preliminary-injunction standard and recognize that Manufacturers will have an opportunity to show a dormant Commerce Clause violation in further district-court proceedings.

. In Healy, Connecticut learned that beer prices were consistently lower in three bordering states than in Connecticut. Id. at 326, 109 S.Ct. 2491. This led to Connecticut residents frequently crossing state lines to purchase beer. Id. To eliminate the price difference, Connecticut enacted a statute requiring out-of-state beer shippers to affirm that their posted prices for products sold to Connecticut wholesale were no higher than the prices sold in the bordering states. Id. The Supreme Court concluded that "the Connecticut statute *746 has the undeniable effect of controlling commercial activity occurring wholly outside the boundary of the State” because once a beer shipper sets its price in Connecticut, it cannot change its price in another neighboring state. Id. at 337, 109 S.Ct. 2491. So in effect, the statute controlled prices in Massachusetts. See id. at 326-27, 109 S.Ct. 2491. Here, the Manufacturers don’t argue that section 58-16a-905.1 controls prices in other states, nor could they, The Manufacturers are free to charge whatever price they choose in other states without violating section 58-16a-905.1.

.The Manufacturers also argue that section 58-16a-905.1 violates the dormant Commerce Clause because it directly regulates interstate commerce. But we have recognized that absent a "regulation ... blatantly regulating price and discriminating against out-of-state consumers or producers, Baldwin's near per se rule doesn’t apply.” Energy and Env’t Legal Inst., 793 F.3d at 1173-74.

. For example, section 58-16a-905.1 doesn’t regulate sales by Colorado retailers that occur in Colorado.

. Under Utah Code Ann. § 70A-2-401(2)(a), title of the goods passes to the buyer at the time and place of the shipment. So if an out-of-state consumer purchases from retailers in Utah, we conclude that Utah possesses a sufficient interest to regulate the sale from retailers in Utah. See Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 184, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995) (bus-ticket sale from Oklahoma to another state has sufficient nexus to Oklahoma under dormant Commerce Clause). This remains so even though the contact lenses are sent to consumers outside of Utah.