MATHESON, Circuit Judge.
I. INTRODUCTION
When a neighborhood bookstore in Denver sells a book, it must collect sales tax from the buyer and remit that payment to the Colorado Department of Revenue (“Department”). When Barnes & Noble sells a book over the Internet to a Colorado buyer, it must collect sales tax from the buyer and remit. But when Amazon sells a book over the Internet to a Colorado buyer, it has no obligation to collect sales tax. This situation is largely the product of the Supreme Court’s decision in Quill Corp. v. North Dakota, 504 U.S. 298, 112 *1132 S.Ct. 1904, 119 L.Ed.2d 91 (1992), which held that, under the dormant Commerce Clause doctrine, a state may not require a retailer having no physical presence in that state — e.g., Amazon as opposed to Barnes & Noble — to collect and remit sales tax on the sales it makes there.
Faced with Quill, many states, including Colorado, rely on purchasers themselves to calculate and pay a use tax on their purchases from out-of-state retailers that do not collect sales tax. But few in Colorado or elsewhere pay the use tax despite their legal obligation to do so.[1] With the explosive growth of e-commerce, the states’ inability to compel out-of-state retailers to collect sales tax has cost state and local governments significant revenue and disadvantaged in-state retailers, who must collect sales tax at the point of sale. Justice Kennedy recently said this “may well be a serious, continuing injustice faced by Colorado and many other States.” Direct Mktg. Ass’n v. Brohl (“Brohl II”), — U.S. -, 135 S.Ct. 1124, 1134, 191 L.Ed.2d 97 (2015) (Kennedy, J., concurring).
In 2010, Colorado attempted to address use tax non-compliance by enacting a law (“Colorado Law”) that imposes notice and reporting obligations on retailers that do not collect sales tax. Plaintiff-Appellee Direct Marketing Association (“DMA”) — a group of businesses and organizations that market products via catalogs, advertisements, broadcast media, and the Internet — has challenged this law as violating the dormant Commerce Clause.
DMA argues the Colorado Law unconstitutionally discriminates against and unduly burdens interstate commerce. The district court agreed with both arguments, granted summary judgment to DMA, and permanently enjoined the Department from enforcing the Colorado Law. See Direct Mktg. Ass’n v. Huber, No. 10-cv-01546-REB-CBS, 2012 WL 1079175, at *10-11 (D.Colo. Mar. 30, 2012). Defendant-Appellant Barbara Brohl, Executive Director of the Department, appeals.[2]
We have jurisdiction under 28 U.S.C. § 1291. We reverse because the Colorado Law does not discriminate against nor does it unduly burden interstate commerce.
II. BACKGROUND
A. Factual History
Colorado has imposed a sales tax since 1935 and a use tax since 1937. The taxes are complementary. The sales tax is paid at the point of sale and the use tax is paid when property is stored, used, or consumed within Colorado but sales tax was not paid to a retailer. See Colo.Rev.Stat. §§ 39-26-104, -202, -204(1). In approving the sales-use tax system under the dormant Commerce Clause, the Supreme Court described it as follows:
The practical effect of a system thus conditioned is readily perceived. One of *1133 its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency, must be to avoid the likelihood of a drain upon the revenues of the state, buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales.
Henneford v. Silas Mason Co., 300 U.S. 577, 581, 57 S.Ct. 524, 81 L.Ed. 814 (1937).
The methods for collecting sales and use taxes vary. In-state retailers subject to sales tax collection are tasked with assorted requirements — for example, obtaining a license, calculating state and local taxes, accounting for exemptions, collecting the tax, filing a return, remitting the tax to the state, and keeping certain records. Instate retailers are also liable for any sales taxes they do not collect and may be subject to fines or criminal penalties for noncompliance.
Because Colorado cannot compel out-of-state retailers without a physical presence in the state to collect taxes, the state requires purchasers themselves to calculate and remit use taxes on their purchases from out-of-state retailers. The regimes differ greatly in effectiveness — compliance with the sales tax is extremely high, and compliance with the use tax is extremely low.
To assist the state in collecting use tax from in-state purchasers, most seemingly unaware of their tax responsibility,[3] the Colorado legislature passed a law in 2010 that imposes three obligations on retailers that do not collect sales taxes — “non-collecting retailers”[4]: (1) to send a “transactional notice” to purchasers informing them that they may be subject to Colorado’s use tax, see Colo.Rev.Stat. § 39-21-112(3.5)(c)(I); 1 Colo.Code Regs. § 201-1:39-21-112.3.5(2);[5] (2) to send Colorado purchasers who buy goods from the retailer totaling more than $500 an “annual purchase summary” with the dates, categories, and amounts of purchases, reminding them of their obligation to pay use taxes on those purchases, Colo.Rev.Stat. § 39-21 — 112(3.5)(d)(I); 1 Colo.Code Regs. § 201-1:39-21-112.3.5(3); and (3) to send the Department an annual “customer information report” listing their customers’ names, addresses, and total amounts spent, Colo.Rev.Stat. § 39-21-112(3.5)(d)(II); 1 Colo.Code Regs. § 201-1:39-21-112.3.5(4). DMA objected to these requirements and brought suit against the Executive Director of the Department.
B. Procedural History
DMA filed a facial challenge to the Colorado Law in federal district court in 2010. Among other claims,[6] it contended that the Colorado Law violates the dormant Commerce Clause because it discriminates *1134 against and unduly burdens interstate commerce.
On March 30, 2012, the district court granted summary judgment to DMA on both grounds. Huber, 2012 WL 1079175, at *10-11. The court permanently enjoined the Department from enforcing the Colorado Law. Id.
On August 20, 2013, this panel held, that the district court lacked jurisdiction to hear DMA’s challenge under the Tax Injunction Act (“TIA”). See Direct Mktg. Ass’n v. Brohl (“Brohl I”), 735 F.3d 904, 906 (10th Cir.2013); 28 U.S.C. § 1341. We remanded the case to the district court to dismiss DMA’s claims and dissolve the permanent injunction. Brohl I, 735 F.3d at 921. The Tenth Circuit rejected a request for en banc review. Direct Mktg. Ass’n v. Brohl, No. 12-1175 (10th Cir. Oct. 1, 2013) (unpublished).
On December 10, 2013, the district court dismissed DMA’s claims and dissolved the permanent injunction. Shortly thereafter, it dismissed the remainder of DMA’s eight claims without prejudice.
DMA then sued the Department in state court. It also petitioned for certiorari to the Supreme Court, seeking review of the Tenth Circuit’s dismissal of its claims based on the TIA.
On February 18, 2014, the state district court preliminarily enjoined enforcement of the Colorado Law based on DMA’s argument that it facially discriminated against interstate commerce in violation of the dormant Commerce Clause. Direct Mktg. Ass’n v. Colo. Dep’t of Revenue, No. 13CV34855, at 1, 22-23 (Dist.Ct.Colo. Feb. 18, 2014) (unpublished). It rejected DMA’s argument that the Colorado Law placed an undue burden on interstate commerce, declining to extend Quill’s holding regarding tax collection to regulatory measures. Id. at 24-30.
On July 1, 2014, the Supreme Court granted DMA’s petition for certiorari. In response to this development, the Colorado state court stayed its proceedings and did not resolve the parties’ cross-motions for summary judgment. On March 3, 2015, the Supreme Court held the TIA did not strip the federal courts of jurisdiction to hear DMA’s challenge and reversed Brohl I. Brohl II, 135 S.Ct. at 1131. It remanded the case for further proceedings.
In the wake of Brohl II’s determination that the TIA’s jurisdictional bar is inapplicable, we are now squarely presented with the two dormant Commerce Clause challenges decided by the federal district court before our decision in Brohl I. The parties have submitted supplemental briefs, and we heard oral argument on September 29, 2015.
III. DISCUSSION
Our discussion proceeds in three parts. First, we present an overview of the dormant Commerce Clause doctrine. Second, we analyze the bright-line rule recognized in Quill and determine it is limited to tax collection. Third, we review DMA’s dormant Commerce Clause claims and conclude the Colorado Law does not discriminate against or unduly burden interstate commerce.[7]
*1135 A. Dormant Commerce Clause
The Constitution does not contain a provision called the dormant Commerce Clause.[8] The doctrine derives from Article I, Section 8, Clause 3 — the Commerce Clause itself — which provides that “Congress shall have [the] power ... [t]o regulate commerce ... among the several States.” As to matters -within the scope of the Commerce Clause power, Congress may choose to regulate, thereby preempting the states from doing so, see Gade v. Nat’l Solid Wastes Mgmt. Ass’n, 505 U.S. 88, 96-98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or to authorize the states to regulate, see In re Rahrer, 140 U.S. 545, 555-56, 11 S.Ct. 865, 35 L.Ed. 572 (1891); Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 429-31, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).
If Congress is silent — neither preempting nor consenting to state regulation— and a state attempts to regulate in the face of that silence, the Supreme Court, going back to Gibbons v. Ogden, 22 (9 Wheat) U.S. 1, 231-32, 238-39, 6 L.Ed. 23 (1824) (Johnson, J., concurring), and Cooley v. Bd. of Port Wardens, 53 U.S. (12 How.) 299, 318-19, 13 L.Ed. 996 (1851), has interpreted the Commerce Clause to limit state regulation of interstate commerce by applying the negative implications of the Commerce Clause — “these great silences of the Constitution,” H.P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 535, 69 S.Ct. 657, 93 L.Ed. 865 (1949); see White v. Mass. Council of Constr. Emp’rs, Inc., 460 U.S. 204, 213, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983). Accordingly, the Commerce Clause is both an express grant of power to Congress and an implicit limit on the power of state and local government. See Comptroller of the Treasury of Md. v. Wynne, — U.S. —, 135 S.Ct. 1787, 1794, 191 L.Ed.2d 813 (2015); Kleinsmith v. Shurtleff, 571 F.3d 1033, 1039 (10th Cir.2009).
The focus of a dormant Commerce Clause challenge is whether a state law improperly interferes with interstate commerce. The primary concern is economic protectionism. See W. Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 192, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) (quotations omitted) (“Th[e] ‘negative’ aspect of the Commerce Clause prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.”); City of Philadelphia v. New Jersey, 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) (“The crucial inquiry, therefore, must be directed to determining whether [a state law] is .basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.”); Kleinsmith, 571 F.3d at 1039 (“The Supreme Court’s jurisprudence under the dormant Commerce Clause ‘is driven by concern about economic protectionism.’” (quoting Dep’t of Revenue of Ky. v. Davis, 553 U.S. 328, 337-38, 128 S.Ct. 1801, 170 L.Ed.2d 685 (2008))).
As to the state regulation at issue in this case, up to now Congress has been silent— it has not preempted or consented to the Colorado Law.[9] The question then is *1136 whether the Constitution’s affirmative grant of the commerce power to Congress should be interpreted to circumscribe the Colorado Law. The judiciary’s answer to this question need not be final. If we uphold the law, Congress can pass its own law and preempt the Colorado Law. Or if we decide the law is unconstitutional under the dormant Commerce Clause doctrine, Congress can enact legislation authorizing Colorado to do what we have struck down. In that sense, the judicial decision determines which party would need to go to Congress to seek a different result.
The Supreme Court has produced an extensive body of dormant Commerce Clause case law.[10] As a general matter, state regulation that discriminates against interstate commerce will survive constitutional challenge only if the state shows “it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.” Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 581, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (quotations omitted). The Court has “required that justifications for discriminatory restrictions on commerce pass the ‘strictest scrutiny.’” Or. Waste Sys., Inc. v. Dep’t of Envtl. Quality, 511 U.S. 93, 101, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994) (quoting Hughes v. Oklahoma, 441 U.S. 322, 337, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)).
Nondiscriminatory state laws also can be invalidated when they impose an undue burden on interstate commerce. See Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). “Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.” Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). “State laws frequently survive this Pike scrutiny....” Davis, 553 U.S. at 339, 128 S.Ct. 1801.[11]
Finally, the Supreme Court has adapted its dormant Commerce Clause jurisprudence to review state taxes on interstate commerce. In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Court stated that a tax on interstate commercial activity is constitutional if it “[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.” Id. at 279, 97 S.Ct. 1076. As discussed more fully below, Complete Auto does not apply here because this case involves a reporting requirement and not a tax.
B. Scope of Quill
The outcome of this case turns largely on the scope of Quill. We conclude it applies narrowly to sales and use tax collection. The following discussion explains how we arrive at this conclusion, which affects both DMA’s claim for discrimination and for undue burden.
In National Bellas Hess, Inc. v. Department of Revenue, 386 U.S. 753, 87 S.Ct. *1137 1389, 18 L.Ed.2d 505 (1967), the Supreme Court addressed whether Illinois could require a Delaware-based mail-order business with no physical presence in Illinois to pay use taxes on sales to Illinois customers. Id. at 753-54, 87 S.Ct. 1389. The seller’s only connection with Illinois was through common carrier and U.S. mail. Id. at 754, 87 S.Ct. 1389. The Court concluded that such a requirement violated the Commerce Clause.
In Quill, the Supreme Court revisited the holding of Bellas Hess. The Court addressed whether North Dakota could “require an out-of-state mail-order house that has neither outlets nor sales representatives in the State to collect and pay a use tax on goods purchased for use within the State.” 504 U.S. at 301, 112 S.Ct. 1904. Quill sold office supplies “through catalogs and flyers, advertisements in national periodicals, and telephone calls.” Id. at 302, 112 S.Ct. 1904. The Supreme Court of North Dakota had determined that this requirement was constitutional because “the tremendous social, economic, commercial, and legal innovations of the past quarter-century have rendered” the holding of Bellas Hess “obsolete.” Id. (quotations omitted). The Supreme Court disagreed.[12]
In Quill, the Supreme Court applied the four-part test from Complete Auto Transit, 430 U.S. at 279, 97 S.Ct. 1076. The test focuses on a statute’s “practical effect” rather than its “formal language,” and, as noted above, sustains a tax under the dormant Commerce Clause when the tax: (1) “is applied to an activity with a substantial nexus with the taxing State,” (2) “is fairly apportioned,” (3) “does not discriminate against interstate commerce,” and (4) “is fairly related to the services provided by the State.” Id. The Court decided Quill based on the first step of the Complete Auto test. 504 U.S. at 311-15, 112 S.Ct. 1904.[13] It determined the dormant Commerce Clause and Bellas Hess create a safe harbor wherein “vendors whose only connection with customers in the taxing State is by common carrier or the United States mail ... are free from state-imposed duties to collect sales and use taxes.” Id. at 315, 112 S.Ct. 1904 (quotations and brackets omitted). The Quill Court relied on Bellas Hess to make a stare decisis decision that recognized the physical presence rule as a “bright-line” test. Id. at 314-18, 112 S.Ct. 1904.
In Brohl II, the Supreme Court characterized Quill as establishing the principle that a state “may not require retailers who lack a physical presence in the State to collect these taxes on behalf of the [state].” 135 S.Ct. at 1127 (emphasis added). Justice Kennedy’s concurrence in Brohl II, 135 S.Ct. at 1135, echoed the numerous commentators who have criticized Quill’s bright-line physical presence test.[14] Even though the Supreme Court has not overruled Quill, it has not extended the physical presence rule beyond the realm of sales and use tax collection.
*1138 This court’s discussion in American Target Advertising, Inc. v. Giani is instructive on this point:
Both Bellas Hess and Quill concern the levy of taxes upon out-of-state entities. The Supreme Court in Quill repeatedly stressed that it was preserving Bellas Hess ’ bright-line rule ‘in the area of sales and use taxes.’ The Utah Act imposes licensing and registration requirements, not tax burdens. The Bel-las Hess/Quill bright-line rule is therefore inapposite.
199 F.3d 1241, 1255 (10th Cir.2000) (quoting Quill, 504 U.S. at 316, 112 S.Ct. 1904) (citations omitted).[15]
DMA argues the Supreme Court has cited Quill in three cases reviewing state laws that did not impose a tax collection obligation, but these decisions merely describe points of law in Quill and do not actually extend its holding to other contexts. See Polar Tankers, Inc. v. City of Valdez, 557 U.S. 1, 11, 129 S.Ct. 2277, 174 L.Ed.2d 1 (2009) (invoking Quill’s due process analysis in a Tonnage Clause case to support the assertion that “a nondomi-ciliary jurisdiction may constitutionally tax property when that property has a substantial nexus with that jurisdiction, and such a nexus is established when the taxpayer avails itself of the substantial privilege of carrying on business in that jurisdiction” (quotations omitted)); Mead-Westvaco Corp. v. Ill. Dep’t of Revenue, 553 U.S. 16, 24-25, 128 S.Ct. 1498, 170 L.Ed.2d 404 (2008) (invoking Quill to sup *1139 port the proposition that “[t]he Commerce Clause and the Due Process Clause impose distinct but parallel limitations on a State’s power to tax out-of-state activities,” then relying on Quill’s due process holding); Camps Newfound/Owatonna, Inc., 520 U.S. at 572 n. 8, 117 S.Ct. 1590 (citing Quill in a string-cite for the proposition that Congress may “repudiate or substantially modify” Commerce Clause jurisprudence).
None of the foregoing cases actually invokes Quill’s dormant Commerce Clause analysis — only its due process analysis and discussion of congressional authority — and they do not demonstrate that Quill extends beyond the actual collection of taxes by out-of-state retailers. Indeed, the cases cited by DMA suggest that Quill has not been extended beyond that context.
In sum, we conclude Quill applies narrowly to and has not been extended beyond tax collection. The district court erred in holding otherwise. In the following section, we address how this conclusion affects DMA’s claims.
C. DMA’s Claims
The district court granted summary judgment on two grounds: the Colorado Law (1) impermissibly discriminates against and (2) unduly burdens interstate commerce. As to both grounds, we review a district court’s grant of summary judgment de novo, evaluating the evidence “in the light most favorable to the non-moving party.” Sabourin v. Univ. of Utah, 676 F.3d 950, 957 (10th Cir.2012) (quotations omitted). We also review challenges to the constitutionality of a statute de novo. Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 972 (10th Cir.2005).
When, as here, the target of state regulation alleges discrimination and undue burden, the analysis proceeds as follows:
When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor instate economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State’s interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits----In either situation the critical consideration is the overall effect of the statute on both local and interstate activity.
Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986) (citations omitted).
1. Discrimination
We turn first to DMA’s discrimination claim. A state law generally violates the dormant Commerce Clause if it discriminates — either on its face or in its practical effects — against interstate commerce. Hughes, 441 U.S. at 336, 99 S.Ct. 1727.
a. District court order
The district court determined the Colorado Law discriminates against interstate commerce in violation of the Commerce Clause. It determined that “the Act and the Regulations directly regulate and discriminate against out-of-state retailers and, therefore, interstate commerce.” Huber, 2012 WL 1079175, at *4.[16] It noted *1140 that under state law, “all retailers doing business in Colorado and selling to Colorado purchasers must obtain a sales tax license and must collect and remit the sales tax applicable to each sale,” id. (citing Colo.Rev.Stat. §§ 39-26-103, -104, -106, - 204), and face civil and criminal penalties for non-compliance, id. (citing Colo.Rev. Stat. §§ 39-21-118(2), 39-26-103(1)(a), (4)). It further noted that Quill precludes the state from imposing these requirements and penalties on out-of-state retailers without a physical presence in Colorado. Id. (citing Quill, 504 U.S. at 315, 112 S.Ct. 1904).
The district court recognized that, although the Colorado Law refers only to “any retailer that does not collect Colorado sales tax,” Colo.Rev.Stat. § 39-21-112, the combination of state law and Quill guarantees that this provision applies only to out-of-state retailers. Huber, 2012 WL 1079175, at *4-5. The court concluded, “the veil provided by the words of the Act and the Regulations is too thin to support the conclusion that the Act and the Regulations regulate in-state and out-of-state retailers evenhandedly.” Id. at *4.
Although the Department pointed out that some out-of-state retailers voluntarily collect and remit Colorado sales tax and therefore are not subject to the Colorado Law, the district court determined the Department “may not condition an out-of-state retailer’s ■ reliance on its rights on a requirement that the retailer accept a different burden, particularly when that burden is unique to out-of-state retailers.” Id. (citing Bendix Autolite Corp. v. Midwesco Enters., Inc., 486 U.S. 888, 893, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988)).
The district court therefore subjected the law to strict scrutiny, at which stage “the burden falls on the State to justify [the statute] both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake.” Id. at *6 (quoting Hughes, 441 U.S. at 336, 99 S.Ct. 1727). The court briefly canvassed the interests identified by the Department and the proposed nondiscriminatory alternatives identified by DMA, and ultimately concluded “[t]he record contains essentially no evidence to show that the legitimate interests advanced by the defendant cannot be served adequately by reasonable nondiscriminatory alternatives.” Id. The court concluded the Department failed to carry its burden on the discrimination analysis and granted summary judgment to DMA. Id. at *7.
b. Analysis
A statute may discriminate against interstate commerce on its face or in practical effect. See C & A Carbone, Inc. v. Town of Clarkstown, 511 U.S. 383, 402, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). “The burden to show discrimination rests on the party challenging the validity of the statute.... ” Hughes, 441 U.S. at 336, 99 S.Ct. 1727. If the party challenging the state law meets its burden to show that the statute is discriminatory, the law “is virtually per se invalid.” Or. Waste, 511 U.S. at 99, 114 S.Ct. 1345. When the Colorado Law is properly viewed in its factual and legal context, DMA has not carried its burden of showing discrimination against interstate commerce.
We consider: (1) whether the Colorado Law facially discriminates against interstate commerce, and (2) whether the Colorado Law’s direct effect is to favor in-state economic interests over out-of-state interests.
*1141 i. The Colorado Law Does Not Facially Discriminate Against Interstate Commerce
The Colorado Law is not -facially discriminatory. It applies to certain retailers that sell goods to Colorado purchasers but do not collect Colorado sales or use taxes. Colo.Rev.Stat. § 39-21-112(3.5)(c)(I); 1 Colo.Code Regs. § 201 — 1:39—21— 112.3.5(l)(a)(i). On its face, the law does not distinguish between in-state and out-of-state economic interests. It instead imposes differential treatment based on whether the retailer collects Colorado sales or use taxes. Some out-of-state retailers are collecting retailers, some are not.
Although the title of the statute— An Act Concerning the Collection of Sales and Use Taxes on Sales Made by Out-Of-State Retailers — mentions out-of-state retailers, the Supreme Court has cautioned that “[t]he title of a statute cannot limit the plain meaning of the text. For interpretive purposes, it is of use only when it sheds light on some ambiguous word or phrase.” Pa. Dep’t of Corr. v. Yeskey, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (quotations and alterations omitted). Here, the words of the statute are not ambiguous. The text refers to “[e]ach retailer that does not collect Colorado sales tax,” which distinguishes between those entities that collect Colorado sales tax and those that do not. See Colo. Rev.Stat. §§ 39-21-112(c)(I), (d)(1)(A), (II)(A). We will not rely on the statute’s title to limit the plain meaning of the text.
Moreover, when the Supreme Court has concluded a law facially discriminates against interstate commerce, it has done so based on statutory language explicitly identifying geographical distinctions. See, e.g., General Motors Corp. v. Tracy, 519 U.S. 278, 307 n. 15, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (“[I]f a State discriminates against out-of-state interests by drawing geographical distinctions between entities that are otherwise similarly situated, such facial discrimination will be subject to a high level of judicial scrutiny even if it is directed toward a legitimate health and -safety goal”). For example, the Court said the statute at issue in Oregon Waste was facially discriminatory because it imposed a higher surcharge on disposal of solid waste “generated out-of-state” than solid waste generated in-state. 511 U.S. at 96, 99-100, 114 S.Ct. 1345. The Colorado Law makes no such geographic distinction. See, e.g., Exxon Corp. v. Governor of Md., 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) (concluding a statute did not facially discriminate by prohibiting producers or refiners of petroleum products from operating retail service stations in Maryland, even though no producers or refiners were located in the state); Hunt v. Wash. State Apple Advert. Comm’n, 432 U.S. 333, 352, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (finding facially neutral a law requiring “all closed containers of apples sold, offered for sale, or shipped into the State bear no grade other than the applicable U.S. grade or standard” (quotations omitted)). As explained above, the Colorado Law distinguishes between those retailers that collect Colorado sales and use tax and those that do not.[17]
*1142 In the absence of facial discrimination, a state law may nonetheless discriminate against interstate commerce in its direct effects. See Kleinsmith, 571 F.3d at 1040 (noting a law “may be neutral in its terms and still discriminate against interstate commerce”); Hunt, 432 U.S. at 350-52, 97 S.Ct. 2434. We therefore next consider the direct effects of the Colorado Law.
ii. The Colorado Law Is Not Discriminatory In Its Direct Effects
A state law may violate the dormant Commerce Clause “when its effect is to favor in-state economic interests over out-of-state interests.” Brown-Forman, 476 U.S. at 579, 106 S.Ct. 2080. In this inquiry, “the critical consideration is the overall effect of the statute on both local and interstate activity.” Id. We conclude the Colorado Law does not favor in-state economic interests and is not discriminatory in its effects.
We have previously said, “ ‘The Supreme Court has not directly spoken to the question of what showing is required to prove discriminatory effect where, as here, a statute is evenhanded on its face,’ ” Kleinsmith, 571 F.3d at 1040 (quoting Cherry Hill Vineyard, LLC v. Baldacci, 505 F.3d 28, 36 (1st Cir.2007)). But we have held “the party claiming discrimination has the burden to put on evidence of a discriminatory effect on commerce that is ‘significantly probative, not merely color-able.’ ” Id. at 1040-41 (quoting All. of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 40 (1st Cir.2005)). The party claiming discrimination must show that the state law benefits local actors and burdens out-of-state actors, and the result must “alter[] the competitive balance between in-state and out-of-state firms.” Id. at 1041 (quotations omitted).[18]
1) DMA’s arguments on differential treatment
As a preliminary matter, DMA is incorrect that (a) “any differential treatment” between in-state and out-of-state entities establishes a violation of the dormant Commerce Clause, and (b) the Colorado Law should be viewed in isolation. Three principles are instructive.
First, the Supreme Court has repeatedly indicated that differential treatment must adversely affect interstate commerce to the benefit of intrastate commerce to trigger dormant Commerce Clause concerns. In that regard, “ ‘discrimination’ simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.” Or. Waste, 511 U.S. at 99, 114 S.Ct. 1345; Kleinsmith, 571 F.3d at 1040 (“Discriminatory laws are those that ‘mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.’ ” (quoting Granholm v. Heald, 544 U.S. 460, 472, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005))). For that reason, differential treatment that benefits or does not affect out-of-state interests is not a violation of the dormant Commerce Clause. North Dakota v. United States, 495 U.S. 423, 439, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) (“A regulatory regime which so favors the Federal Government *1143 cannot be considered to discriminate against it.”).
In light of the Colorado consumers’ preexisting obligations to pay sales or use taxes whether they purchase goods from a collecting or non-collecting retailer, the reporting obligation itself does not give instate retailers a competitive advantage. We further note the Supreme Court has upheld differential tax reporting obligations and apportionment formulas for non-resident corporations, see, e.g., Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113, 118-20, 41 S.Ct. 45, 65 L.Ed. 165 (1920); Container Corp. of Am. v. Franchise Tax Bd., 463 U.S. 159, 169-70, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), and administrative mechanisms to facilitate tax collection, see, e.g., Travis v. Yale & Towne Mfg. Co., 252 U.S. 60, 40 S.Ct. 228, 64 L.Ed. 460 (1920).[19]
Second, equal treatment requires that those similarly situated be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (stating that under the Equal Protection Clause, “all persons similarly situated should be treated alike”). Conversely, disparate treatment is not unequal treatment or discrimination if the subjects of the treatment are not similarly situated. This basic principle of equal protection law applies to whether a state law discriminates against out-of-state actors relative to in-state actors. In General Motors Corp. v. Tracy, 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997), the Supreme Court upheld an Ohio statute that exempted local natural gas distribution companies (“LDCs”) from sales and use tax while out-of-state producers and marketers had to collect it. Id. at 281-82, 117 S.Ct. 811. The Court said the in-state and out-of-state companies were not similarly situated and did not have to be treated the same. Id. at 298-99, 310, 117 S.Ct. 811. Here, the non-collecting out-of-state retailers are not similarly situated to the instate retailers, who must comply with tax collection and reporting requirements that are' not imposed on the out-of-state non-collecting retailers.
Third, despite DMA’s myopic view to the contrary, the Supreme Court has repeatedly stressed that laws are not to be understood in isolation, but in their - broader context. In West Lynn Creamery, the Court expressly declined to “analyze separately two parts of an integrated regulation,” and said it is “the entire program ... that simultaneously burdens interstate commerce and discriminates in favor of local producers.” 512 U.S. at 201, 114 S.Ct. 2205; see also Ala. Dep’t of Revenue v. CSX Transp., Inc. (“CSX II ”), — U.S. —, 135 S.Ct. 1136, 1143, 191 L.Ed.2d 113 (2015) (“It is undoubtedly correct that the ‘tax’ (singular) must discriminate — but it does not discriminate unless it treats railroads differently from other similarly situated taxpayers without sufficient justification.”);[20] North Dakota, 495 U.S. at 435, 110 S.Ct. 1986 (“[T]he question whether a state regulation discriminates against the Federal Government cannot be viewed in isolation. Rather, the entire regulatory system should be analyzed to determine whether it is discriminatory with regard to the economic bur *1144 dens that result.” (quotations omitted)); Gregg Dyeing Co. v. Query, 286 U.S. 472, 479-80, 52 S.Ct. 631, 76 L.Ed. 1232 (1932) (“What is required is that state action, whether through one agency or another, or through one enactment or more than one, shall be consistent with the restrictions of the Federal Constitution. There is no demand in that Constitution that the state shall put its requirements in any one statute. It may distribute them as it sees fit, if the result, taken in its totality, is within the state’s constitutional power.”).
The broader context helps determine whether a law “alters the competitive balance between in-state and out-of-state firms.” Kleinsmith, 571 F.3d at 1041 (quotations omitted). Here, the reporting requirements are designed to increase compliance with preexisting tax obligations, and apply only to retailers that are not otherwise required to comply with the greater burden of tax collection and reporting. DMA has not shown the Colorado Law imposes a discriminatory economic burden on out-of-state vendors when viewed against the backdrop of the collecting retailers’ tax collection and reporting obligations. And as discussed more fully below, even if we limit our comparative analysis to the notice and reporting obligations imposed on collecting and non-collecting vendors, DMA has failed to show the Colorado Law unconstitutionally discriminates against interstate commerce.
2) Quill and discriminatory effect
Whether the Colorado Law works a discriminatory effect on interstate commerce turns on the reach of Quill. The Department contends the law is not discriminatory because out-of-state retailers can either (a) comply with the notice and reporting requirements or (b) collect and remit taxes like in-state retailers. DMA contends this argument fails because Quill protects out-of-state retailers from having to collect and remit taxes, making the Colorado Law’s only function to impose new notice and reporting responsibilities on out-of-state retailers that in-state retailers need not perform.
As an initial matter, we disagree with the Department that out-of-state retailers’ having the option to collect and remit sales taxes makes the Colorado Law nondiscriminatory. Quill unequivocally holds that out-of-state retailers without a physical presence in the state need not collect sales tax. See Quill, 504 U.S. at 301-02, 112 S.Ct. 1904. Quill privileges out-of-state retailers in that regard, and the possibility that they might choose to give up that privilege rather than comply with the challenged Colorado Law does not make the Colorado Law constitutional. Bendix, 486 U.S. at 893, 108 S.Ct. 2218.
But Quill applies only to the collection of sales and use taxes, and the Colorado Law does not require the collection or remittance of sales and use taxes. Instead, it imposes notice and reporting obligations. Those notice and reporting obligations are discriminatory only if they constitute “differential treatment of instate and out-of-state economic interests that benefits the former and burdens the latter,” Or. Waste, 511 U.S. at 99, 114 S.Ct. 1345, and thereby “alter[] the competitive balance between in-state and out-of-state firms,” Kleinsmith, 571 F.3d at 1041 (quotations omitted). DMA has not produced significant probative evidence establishing such discriminatory treatment.
3) Comparative regulation and DMA’s burden
Even if we limit our comparative analysis to the regulatory requirements imposed on in-state retailers and out-of-state retailers, DMA has not demonstrated the Colorado Law unconstitutionally discriminates against interstate commerce.
*1145 In addition to collecting sales taxes, holding them in trust, and remaining liable for any sales and use tax due on a transaction, see Colo.Rev.Stat. §§ 39-26-105, - 118(1), instate retailers must comply with numerous requirements, including obtaining a license; calculating the state and local tax due while accounting for any tax exemptions; filing a return; remitting the tax to the State; and maintaining various records. See Colo.Rev.Stat. §§ 39-26-101 to -129.
Of these notice and reporting requirements, in-state retailers can be compelled to collect and remit sales taxes while non-collecting out-of-state retailers cannot. Quill, 504 U.S. at 301-02, 112 S.Ct. 1904. But Quill does not establish that out-of-state retailers are free from all regulatory requirements — only tax collection and liability. See id. at 315, 112 S.Ct. 1904 (“Under Bellas Hess, ... vendors [without a physical presence in the state] are free from state-imposed duties to collect sales and use taxes.” (emphasis added)).
As the Supreme Court recently explained in CSX II:
It does not accord with ordinary English usage to say that a tax discriminates against a rail carrier if a rival who is exempt from that tax must pay another comparable tax from which the rail carrier is exempt. If that were true, both competitors could claim to be disfavored- — discriminated against — relative to each other. Our negative Commerce Clause eases endorse the proposition that an additional tax on third parties may justify an otherwise discriminatory tax. We think that an alternative, roughly equivalent tax is one possible justification that renders a tax disparity nondiscriminatory.
135 S.Ct. at 1143 (citations omitted); see also Travis, 252 U.S. at 76, 40 S.Ct. 228 (“The contention that an unconstitutional discrimination against noncitizens arises out of the provision of section 366 confining the withholding at source to the income of nonresidents is unsubstantial. That provision does not in any wise increase the burden of the tax upon nonresidents, but merely recognizes the fact that as to them the state imposes no personal liability, and hence adopts a convenient substitute for it.”).
DMA does not point to any evidence establishing that the notice and reporting requirements for non-collecting out-of-state retailers are more burdensome than the regulatory requirements in-state retailers already face. Because DMA has not carried its burden and identified significant probative evidence of discrimination, see Kleinsmith, 571 F.3d at 1040, it has not established that the Colorado Law discriminates in its direct effects.
Because we conclude the Colorado Law is not discriminatory, “it is [not] virtually per se invalid,” and it need not survive strict scrutiny. Or. Waste, 511 U.S. at 99, 114 S.Ct. 1345. State laws that are not discriminatory must nevertheless not unduly burden interstate commerce. See Davis, 553 U.S. at 353, 128 S.Ct. 1801.
D. Undue Burden
Whether a state law unduly burdens interstate commerce is a separate inquiry from whether a state law discriminates against interstate commerce. In Quill, the Supreme Court explained that the first step of the Complete Auto test — whether a tax “is applied to an activity with a substantial nexus with the taxing State” — the step on which the Quill decision was based, “limit[s] the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce.” 504 U.S. at 311, 313, 112 S.Ct. 1904.
*1146 The district court decided the undue burden issue on the basis that Quill’s bright-line rule applied. DMA limits its undue burden argument to Quill and also states that “[b]ecause the Act is discriminatory, the test generally applied to evenhanded regulations plainly does not apply in this case,” Aplee. Supp. Br. at 23 n. 8 (citing Pike, 397 U.S. at 142, 90 S.Ct. 844).[21] We therefore address undue burden based on Quill and do not reach a balancing analysis under Pike, 397 U.S. at 142, 90 S.Ct. 844.
1. District Court Order
The district court determined the Colorado Law unduly burdens interstate commerce in violation of the dormant Commerce Clause. It noted Quill counsels looking beyond the formal language of a statute and considering its practical effect. See Quill, 504 U.S. at 310, 112 S.Ct. 1904. Although Quill itself narrowly focused on sales and use taxes, the district court noted that the Colorado Law “require[s] out-of-state retailers to gather, maintain, and report information, and to provide notices to their Colorado customers and to the [Department],” and “[t]he sole purpose of these requirements is to enhance the collection of use taxes by the State of Colorado.” Huber, 2012 WL 1079175, at *8. As a result, the district court concluded “that the burdens imposed by the Act and the Regulations are inextricably related in kind and purpose to the burdens condemned in Quill.” Id. On that basis, the court determined the Colorado Law imposed an undue burden on interstate commerce. Id. at *9.
2. Analysis
DMA relies solely on Quill for its undue burden claim, and the district court limited its analysis of undue burden to Quill. We conclude that the Colorado Law does not impose an undue burden on interstate commerce.[22] Quill is not binding in light of Supreme Court and Tenth Circuit decisions construing it narrowly to apply only to the duty to collect and remit taxes.
As explained earlier, Quill is limited to the narrow context of tax collection. In Brohl II, the Supreme Court not only characterized Quill as establishing the principle that a state “may not require retailers who lack a physical presence in the State to collect these taxes on behalf of the Department,” 135 S.Ct. at 1127 (emphasis added), it also concluded that the notice and reporting requirements of the Colorado Law do not constitute a form of tax collection, id. at 1130-31. As the Court repeatedly stated in its TIA analysis, the Colorado Law does not require out-of-state retailers to assess, levy, or collect use tax on behalf of Colorado. Id. *1147 at 1131 (“The TIA is keyed to the acts of assessment, levy, and collection themselves, and enforcement of the notice and reporting requirements is none of these.”). The Court determined “the notice and reporting requirements precede the steps of ‘assessment’ and ‘collection,’ ” in part because “[a]fter each of these notices or reports is filed, the State still needs ,to take further action to assess the taxpayer’s use-tax liability and to collect payment from him.” Id.[23]
As a result, Quill — confined to the sphere of sales and use tax collection — is not controlling. The Brohl II Court’s logic for reversing Brohl I precludes any other result. It reversed the panel’s TIA determination precisely because it determined the relief sought in this litigation — invalidating the Colorado Law — would not “enjoin, suspend or restrain the assessment, levy or collection of any tax under State .law.” Id. at 1127 (quoting 28 U.S.C. § 1341). The holding in Brohl II cannot be squared with the district court’s determination that the Colorado Law functionally compels the collection of taxes, see Huber, 2012 WL 1079175, at *8. The Court’s conclusion in Brohl II controls. DMA’s success in Brohl II leads to the demise of its undue burden argument here.
Having determined Quill is not controlling in the instant case, we cannot identify any good reason to sua sponte extend the bright-line rule of Quill to the notice and reporting requirements of the Colorado Law. Because the Colorado Law’s notice and reporting requirements are regulatory and are not subject to the bright-line rule of Quill, this ends the undue burden inquiry.[24]
IV. CONCLUSION
Applying the law to the record, we hold the Colorado Law does not violate the dormant Commerce Clause because it does not discriminate against or unduly burden interstate commerce. We therefore reverse the district court’s order granting summary judgment and remand for further proceedings consistent with this opinion. We conclude by noting the Supreme Court’s observation in Quill that Congress holds the “ultimate power” and is “better qualified to resolve” the issue of “whether, when, and to what extent the States may burden interstate [retailers] with a duty to collect [sales and] use taxes.” 504 U.S. at 318, 112 S.Ct. 1904.[25]

. The parties dispute the precise rate of noncompliance. As the Department points out, the 75% compliance rate that DMA cites encompasses both sales and use taxes on all Internet sales, including those by retailers with a physical presence that must collect taxes. It reports the compliance rate on remote retail sales with no collection obligation is, as Justice Kennedy recently.pointed out, only 4%. See Direct Mktg. Ass’n v. Brohl (“Brohl II"), 135 S.Ct. 1124, 1135 (2015) (Kennedy, J., concurring); see also Brief of National Governors Ass’n et al. as Amici Curiae in Support of Defendant-Appellant Supporting Reversal at 10, Direct Mktg. Ass'n v. Brohl, No. 12-1175 (10th Cir. argued Sept. 29, 2015) (estimating household use-tax compliance at 0-5%, excluding motor vehicle purchases). As the Department notes, any figure in the record would be significantly lower than the 98.3% compliance rate for sales taxes.

. When this lawsuit was filed in district court, the executive director was Roxy Huber. Ms. Brohl was later substituted as the defendant.

. See David Gamage & Devin J. Heckman, A Better Way Forward for State Taxation of E-Commerce, 92 B.U. L.Rev. 483, 489 (2012).

. A "non-collecting retailer” is defined as “a retailer that sells goods to Colorado purchasers and that does not collect Colorado sales or use tax.” 1 Colo.Code Regs. § 201-1:39-21-112.3.5(1)(a)(i). Retailers who made less than $100,000 in total gross sales in Colorado in the previous calendar year, and who reasonably expect gross sales in the current calendar year to be less than $100,000, are exempt from the notice and reporting obligations. Id. § 201-1:39-21-112.3.5(l)(a)(iii).

. The transactional notice requirement can be satisfied in various ways, including an online pop-up window, a packing slip, or other methods.

. DMA originally brought eight claims for relief, including First and Fourteenth Amendment challenges, but its motion for summary judgment included only the two dormant *1134 Commerce Clause challenges. We are presented only with those challenges on this appeal.

. In Brohl II, the Supreme Court noted this court's discussion of the "comity doctrine” in Brohl I and left "it to the Tenth Circuit to decide on remand whether the comity argument remains available to Colorado.” 135 S.Ct. at 1134. The Department argues "this Court should not dismiss this case based on comity. Consistent with U.S. Supreme Court precedent, the Department has affirmatively waived reliance on the comity doctrine.” Aplt. Supp. Br. at 23. DMA agrees. Aplee. Supp. Br. at 59. On this non-jurisdictional prudential matter, we do not dismiss this case on comity grounds.

. Nowhere does the Constitution explicitly limit state interference with interstate commerce except very specific limitations in Article I, Section 10, which prevent states from coining money or imposing duties on exports and imports.

. As DMA has noted in its supplemental brief, “since the parties first filed their briefs in this case in 2012, Congress has increased its already active scrutiny of the issue.” Aplee. Supp. Br. at 50.

. A Thomson Reuters Westlaw search of "Dormant Commerce Clause” on February 9, 2016, produced a list of 56 United States Supreme Court decisions.

. In Energy & Env't Legal Inst. v. Epel, 793 F.3d 1169, 1172 (10th Cir.2015), cert. denied, — U.S. —, 136 S.Ct. 595, 193 L.Ed.2d 487 (2015), this court recently acknowledged a third type of dormant Commerce Clause cases: those involving "certain price control and price affirmation laws that control 'extraterritorial' conduct.” This category does not apply to this appeal.

.The Court did overrule Bellas Hess on a separate issue. Bellas Hess had held that the Illinois use tax requirement had violated due process principles. The Quill court held that, “to the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State for the imposition of duty to collect a use tax, we overrule those holdings as superseded by developments in the law of due process.” 504 U.S. at 308, 112 S.Ct. 1904.

. The Court did not address whether the North Dakota use tax violated the third step of the Complete Auto test, which asks whether a state tax discriminates against interstate commerce.

. See, e.g., H. Beau Baez III, The Rush to the Goblin Market: The Blurring of Quill’s Two Nexus Tests, 29 Seattle U.L.Rev. 581, 581-82 (2006); Walter Hellerstein, Deconstructing the Debate Over State Taxation of Electronic Commerce, 13 Harv. J.L. & Tech. 549, 549-50 (2000).

. Other circuits have recognized that Quill is limited to state taxes. See Sam Francis Found. v. Christies, Inc., 784 F.3d 1320, 1324 (9th Cir.2015); Ferndale Labs., Inc. v. Cavendish, 79 F.3d 488, 490, 494 (6th Cir.1996).
Moreover, the weight of state authority limits Quill's physical presence requirement to sales and use taxes, as opposed to other kinds of taxes. See, e.g., Lamtec Corp. v. Dep’t of Revenue, 170 Wash.2d 838, 246 P.3d 788, 794 (2011) (en banc) (stating in dicta "[tjhere is also extensive language in Quill that suggests the physical presence requirement should be restricted to sales and use taxes” as opposed to business and occupation taxes); KFC Corp. v. Iowa Dep’t of Revenue, 792 N.W.2d 308, 328 (Iowa 2010) (''[W]e hold that a physical presence is not required under the dormant Commerce Clause of the United States Constitution in order for the Iowa legislature to impose an income tax on revenue earned by an out-of-state corporation arising from the use of its intangibles by franchisees located within the State of Iowa.”); Geoffrey, Inc. v. Comm’r of Revenue, 453 Mass. 17, 899 N.E.2d 87, 94-95 (2009) (explaining ”[t]he Supreme Court's decision in Quill discussed a 'physical-presence' requirement under the commerce clause only in the context of sales and use taxes,” not taxes on royalty income); Tax Comm’r v. MBNA Am. Bank, N.A., 220 W.Va. 163, 640 S.E.2d 226, 232 (2006) ("[W]e conclude that Quill's physical-presence requirement for showing a substantial Commerce Clause nexus applies only to use and sales taxes and not to business franchise and corporation net income taxes.”); Lanco, Inc. v. Dir., Div. of Taxation, 188 N.J. 380, 908 A.2d 176, 176-77 (2006) (concluding Quill does not prohibit a state from imposing a corporation business tax on physically non-present businesses); Geoffrey, Inc. v. S.C. Tax Comm’n, 313 S.C. 15, 437 S.E.2d 13, 18 & n. 4 (1993) (concluding the physical-presence requirement of Bellas Hess and Quill applies only to sales and use taxes). But see J.C. Penney Nat'l Bank v. Johnson, 19 S.W.3d 831, 839 (Tenn.Ct.App.1999) ("Any constitutional distinctions between the franchise and excise taxes presented here and the use taxes contemplated in Bellas Hess and Quill are not within the purview of this court to discern.”).
These cases generally interpret Quill to apply exclusively to sales and use taxes for two reasons relevant here. First, they emphasize the language in Quill itself, which stated "we have not, in our review of other types of taxes, articulated the same physical-presence requirement that Bellas Hess established for sales and use taxes.” 504 U.S. at 314, 112 S.Ct. 1904. Second, they highlight Quill’s stare decisis rationale rooted in the mail order industry’s reliance on Bellas Hess — a reliance interest absent in the context of other taxes. See KFC Corp., 792 N.W.2d at 324.

. The district court stopped short of saying the law was facially discriminatory, noting:
On their face the Act and the Regulations do not distinguish between instate retailers (those with a physical presence — a brick and mortar presence — in the state) and out-of-state retailers (those with no physical presence in the state who make sales to customers in the state). Rather, the Act focuses on the distinction between retailers *1140 who collect Colorado sales tax and those who do not collect Colorado sales tax.

Id.

. DMA contends the Colorado Law fails the internal consistency test. The test "looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." Comptroller of Treasury of Md. v. Wynne, - U.S. -, 135 S.Ct. 1787, 1802, 191 L.Ed.2d 813 (2015) (quotations omitted). The test has been confined to dormant Commerce Clause review of state taxes. It is therefore inapplicable here because, again, the Colorado Law imposes a reporting requirement, not a tax.

. In Kleinsmith, we determined the plaintiff had not presented evidence sufficient to establish a discriminatory effect because he had failed to show how the state law at issue "alters the competitive balance between resident and nonresident attorneys.” Id. at 1042. “In light of Exxon, Mr. Kleinsmith should at least have produced evidence that the work he had performed was now being done by attorneys who are residents of Utah.” Id. at 1043. DMA bears a similar burden here.

. Although Travis involved a claim under the Privileges and Immunities Clause, the Supreme Court in Wynne recently relied on Travis to resolve a claim under the Commerce Clause. See Wynne, 135 S.Ct. at 1799-1800 (citing Travis, 252 U.S. at 75, 79-80, 40 S.Ct. 228).

. CSX II was not a dormant Commerce Clause case, but in analyzing the 4-R Act, the Court borrowed from dormant Commerce Clause precedent to explain a law should be assessed in context to determine whether it discriminates. Id. at 1143 (citing Gregg Dyeing Co. v. Query, 286 U.S. 472, 479-80, 52 S.Ct. 631, 76 L.Ed. 1232 (1932)).

. In the same footnote, DMA argues Colorado’s expert testimony shows the burdens imposed on non-collecting retailers — "an estimated $25 million to $60 million in the first year, and $10 million annually thereafter” — • are “grossly excessive” compared to the initial annual revenue of $12.5 million estimated to result from the Colorado Law. Aplee. Supp. Br. at 23 n. 8. The district court did not analyze DMA’s claims under the Pike balancing test, and DMA’s single sentence is inadequate to present a Pike balancing argument on appeal. DMA also "refers the Court” to DMA’s argument section of its brief filed in 2012, id. at 2 n. 1, but when we granted DMA’s motion to file supplemental briefs after the case was remanded by the Supreme Court, we "directed] the parties to provide full briefing on the Commerce Clause claims ... and any other issues the parties consider pertinent to this appeal on remand.” Direct Mktg. Ass'n v. Brohl, No. 12-1173, at *1 (10th Cir. Apr. 13, 2015) (unpublished) (emphasis added).

. We note that the Colorado state district court that addressed whether the Colorado Law imposes an undue burden under Quill came to the same conclusion. Direct Mktg. Ass’n, No. 13CV34855, at 28-30.

. The Department did not "seriously contend” the notice and reporting requirements constituted a levy. Id.

. At this point, the regulatory requirements must only satisfy due process requirements, and DMA has not made a due process challenge in its motion for summary judgment or its arguments on appeal.

.We grant the motions for leave to file ami-ci briefs and the motion for leave to file a joint reply in support of the motions for leave to file amici briefs.